

1995 Decisions

1-6-1995

# Sempier v Johnson & Higgins

Precedential or Non-Precedential:

Docket 94-5208

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Sempier v Johnson & Higgins" (1995). *1995 Decisions.* Paper 6.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/6

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

----------

No. 94-5208

----------

BURT N. SEMPIER

Appellant

v.

JOHNSON & HIGGINS

----------

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 92-01708)

----------

Argued Friday, September 23, 1994

BEFORE:  BECKER, COWEN and GARTH Circuit Judges

----------

(Opinion filed  January 6, 1995)

----------


Charles F. Waskevich, Jr. (Argued)
Riker, Danzig, Scherer, Hyland
& Perretti
One Speedwell Avenue
Headquarters Plaza
Morristown, New Jersey 07962-1981

Attorney for Appellant


John F. Cannon
Sullivan & Cromwell
125 Broad Street
New York, New York 10004

Francis X. Dee (Argued)
Carpenter, Bennett & Morrissey
100 Mulberry Street
Three Gateway Center
Newark, New Jersey 07102

Attorney for Appellee

----------

OPINION OF THE COURT

----------

GARTH, Circuit Judge:

On March 9, 1994, the district court granted summary judgment in favor of Johnson & Higgins ("J & H"), the employer of appellant Burt Sempier.  Sempier now appeals the district court's grant of summary judgment on his Age Discrimination in Employment Act (ADEA) claim, 29 U.S.C. § 263 (1988),[1] and the discretionary dismissal of his pendent state law claims.  He also raises as error the district court's substitution of a "Bill of Particulars" in place of his interrogatories.

---

[1].  29 U.S.C. § 623(a) in relevant part provides:

It shall be unlawful for an employer--
(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age . . . .

We have jurisdiction pursuant to 28 U.S.C. § 1291 to review the March 9, 1994 final order of the district court. Because the record reflects a genuine issue of material fact regarding whether J & H's asserted nondiscriminatory reasons for discharging Sempier are pretextual, we will reverse the summary judgment entered in favor of J & H. We also conclude that the district court abused its discretion in substituting its own "Bill of Particulars" for Sempier's interrogatories.

I

Sempier joined appellee J & H, an insurance brokerage and employee benefits consulting firm, in 1968.[2] Sempier worked as Comptroller until 1971 when he became Treasurer of J & H. In 1984, J & H created a new position of Chief Financial Officer ("CFO"), and the Board of Directors elected Sempier to that post.

The parties dispute whether the J & H directors criticized Sempier's performance as CFO. Sempier avers that no one advised him that his performance was less than satisfactory nor did anyone bring to his attention any deficiencies in his performance of his functions. App. 300. Robert Hatcher, the firm's chairman who was Sempier's friend and had been instrumental in Sempier being elected as CFO, states that he was generally pleased with Sempier's work. At the same time, he acknowledges that other directors had criticized Sempier's

---

[2]. J & H is a closely held New Jersey corporation. It operates as if it were a partnership. All stockholders are members of the firm. All directors are employees of the firm.

performance.  App. 363-65.  Other J & H directors state in affidavits that they believed that Sempier performed below expectations.  App. 727 (affidavit of Eric Johnson); App. 778-79 (affidavit of Kenneth Hecken).

In 1985, one year after Sempier assumed his duties as CFO, an outside audit of the Finance Department, requested by J & H director Eric Johnson, criticized the department's operations.  App. 728-29.  After further investigation, Johnson sought to have Sempier replaced.  Despite Johnson's criticisms, J & H unanimously elected Sempier to the Board of Directors in 1986.  Hatcher supported Sempier's election to the Board of Directors because he believed that this move would assist Sempier in improving the Finance Department's operations.  When Sempier was elected, J & H required that he execute a letter of resignation that would become effective upon a two-thirds vote of the Board of Directors.

In May 1987, J & H removed Sempier from his responsibilities as CFO and made him Chief Administrative Officer ("CAO") in charge of Management Information Systems ("MIS"), Human Resources, Professional Development, and Real Estate and Facilities.  Sempier was unanimously reelected to the Board in 1989.  Both sides dispute how Sempier performed as CAO.

Due to the increasing importance of MIS services and the department's unsatisfactory record, J & H decided to elevate the MIS department's status by hiring a Chief Information Officer ("CIO"), thereby removing MIS from Sempier's supervision. Notwithstanding some lobbying by Hatcher, the firm denied Sempier

the CIO position.  In December 1989, J & H hired Alan Page, who is fourteen years younger than Sempier, as CIO.  The directors elected Page to the board in 1990.

Three months later, J & H hired Thomas Carpenter, who is four years younger than Sempier, to assume responsibility for Human Resources and Professional Development, starting in May 1990.  Carpenter's arrival left Sempier with significantly reduced responsibilities.

In May 1989, before either Page or Carpenter had been hired, J & H had instituted an early retirement program to retire "redundant" and "poorly performing" employees who were 55 years of age or older.  App. 636-37.  The firm intended to use the program either to "pull" employees into retirement through incentives or to "push" them into retirement through involuntary "terminations" which were to be characterized as downsizing. App. 637 (Exhibit 8).

In April 1990, Hatcher, who was still the Chairman of J & H, advised Sempier to retire early with certain enhancements to his existing retirement package.  Hatcher stated that Sempier had "lost credibility" with unnamed senior managers.  App. 301. Sempier refused to retire.  Hatcher responded, using strong and unequivocal language, that Sempier had no choice but to retire or to be forced out.  App. 302.

Between April 1990 and April 1991, J & H engaged in extended, and occasionally bitter, negotiations with Sempier seeking to obtain his retirement or resignation.  In January 1991, David Olsen succeeded Hatcher as Chairman of J & H.  When,

in the spring of 1991, Sempier told Olsen that he had hired a lawyer, Olsen told Sempier that he could no longer return to J & H and should vacate his office. App. 81. At the same time, Olsen wrote the firm's general counsel that "[i]t's obviously time for hardball." App. 80. After Sempier consistently refused to retire, the Board made effective Sempier's previously executed resignation in June 1991.

Sempier filed an age discrimination claim with the Equal Employment Opportunity Commission, received a right to sue letter, and instituted an ADEA suit in the District of New Jersey with pendent state law claims for breach of contract as well as violations of the New Jersey Law Against Discrimination and the New Jersey Business Corporations Act. J & H answered that Sempier had been discharged for poor performance.

At the outset of the litigation, Sempier served two sets of interrogatories and a series of document requests on J & H. When J & H refused to respond to a substantial portion of the discovery requested, Sempier sought an order from the magistrate judge which would have compelled J & H to respond. The magistrate judge denied Sempier's motion. On appeal, the district court judge vacated the order of denial but remanded the dispute to the magistrate judge without entering an order compelling discovery. On remand, the magistrate judge relieved J & H from answering the original two sets of interrogatories and required that Sempier draft a third set of interrogatories. App. 563-64. After J & H refused to answer almost all of these interrogatories, Sempier again sought a second order compelling

discovery. The magistrate judge denied Sempier's motion to compel answers and ordered J & H to provide information responding to a "Bill of Particulars" drafted by the court. App. 576. On appeal, the district court affirmed the magistrate judge's order and added one question of its own to the "Bill of Particulars."

Between November and December 1993, the parties disputed whether J & H had complied with the court's orders to answer the court's questions and to provide documents. In December, Sempier filed additional motions for an order to compel discovery and for partial summary judgment. J & H replied with its motion for summary judgment.

The district court granted J & H's summary judgment motion on the ADEA claim and dismissed the remaining pendent claims without prejudice. The district court expressed concern that Sempier had not made out a prima facie case because of an inability to show that he was a qualified employee or replaced by a sufficiently younger employee to raise an inference of age discrimination. Nonetheless, it turned to J & H's asserted nondiscriminatory reasons for Sempier's discharge and Sempier's evidence of pretext.

The district court found that J & H had come forward with two alleged reasons for Sempier's discharge: (1) that Sempier's reduced responsibilities did not justify his continued presence on the Board of Directors and (2) that Sempier's poor performance had justified the reduction in his responsibilities and eventual discharge. Moreover, the district court held that

Sempier had not produced sufficient evidence to allow a jury to find that J & H's alleged nondiscriminatory reasons were a pretext for discrimination.  Accordingly, the court entered a judgment in favor of J & H, denied Sempier's motion for partial summary judgment, and dismissed Sempier's pendent state law claims without prejudice.

Sempier filed a timely appeal.

II

A.

When we review a grant of summary judgment, we apply the same test that the district court should have applied initially.  Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir.) (en banc), cert. dism'd, 483 U.S. 1052 (1987).  Summary judgment is appropriate only when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law.  Id.; see Fed. R. Civ. Proc. 56(c) (1994).  When the moving party (here, J & H) does not bear the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's (here, Sempier's) evidence is insufficient to carry its burden of persuasion at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Thereafter, the nonmoving party creates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable jury to find for him at trial.  Anderson v. Liberty Lobby, 477  U.S. 242, 248 (1986).

In reviewing the record, the court must give the nonmoving party the benefit of all reasonable inferences. Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993); Gray v. York Newspapers, Inc., 957 F.2d 1070, 1077 (3d Cir. 1992); Chipollini, 814 F.2d at 900; see also id. at 901 (discussing the impropriety of credibility determinations on summary judgment); Josey, 996 F.2d at 639 (same).

B.

Sempier prosecuted his case on the "pretext" theory announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and later clarified in Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981) and St. Mary's Honor Center v. Hicks, __ U.S. __, 113 S. Ct. 2742 (1993).[3]

As applied to ADEA cases, the plaintiff establishes a prima facie case by showing that (1) he is over 40, (2) he is qualified for the position in question, (3) he suffered an adverse employment decision, and (4) he was replaced by a sufficiently younger person to create an inference of age discrimination. Chipollini, 814 F.2d at 897.[4]  This showing

---

[3].  Although the pretext framework originated in the context of Title VII, it has been applied to the ADEA. See, e.g., Geary v. Visitation of the Blessed Virgin Mary Parish School, 7 F.3d 324 n.4 (3d Cir. 1993).

[4].  Sempier's complaint appears to suggest that J & H violated the ADEA not only by discharging him as an employee but also by removing him as a director. For the most part, the record and the parties' briefs treat these two events as functionally identical. Whether the ADEA extends to cover Sempier's status as a director is a function of Sempier's duties and not his title. See Nationwide Mutual Insurance Co. v. Darden, 112 S. Ct. 1344,

creates a presumption of age discrimination that the employer must rebut by stating a legitimate nondiscriminatory reason for the adverse employment decision.  Hicks, __ U.S. at __, 113 S. Ct. at 2747; Chipollini, 814 F.2d at 897.  The plaintiff then has the opportunity to demonstrate that the employer's stated reasons were not its true reasons but were a pretext for discrimination. Hicks, __ U.S. at __, 113 S. Ct. at 2747; Chipollini, 814 F.2d at 897.  He may do this through direct or circumstantial evidence of falsity or discrimination.  Chauhan v. M. Alfieri Co., Inc., 897 F.2d 123, 128 (3d Cir. 1990); Chipollini, 814 F.2d at 898-99.

Moreover, to defeat a summary judgment motion based on a defendant's proffer of a nondiscriminatory reason, a plaintiff who has made a prima facie showing of discrimination need only point to evidence establishing a reasonable inference that the employer's proffered explanation is unworthy of credence. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).  A plaintiff is not required to produce evidence which necessarily leads to the conclusion "that the employer did not act for the nondiscriminatory reasons."  Sorba v. Pennsylvania Drilling Co.,

(..continued)
1348-49 (1992) (considering the definition of employee under ERISA); Frankel v. Bally, Inc., 987 F.2d 86, 89-91 (2d Cir. 1993) (considering the test for who is covered under the ADEA); Equal Employment Opportunity Commission v. Zippo Manufacturing Co., 713 F.2d 32, 36-38 (3d Cir. 1983) (same); Equal Employment Opportunity Commission v. First Catholic Slovak Ladies Association, 694 F.2d 1068, 1070 (6th Cir. 1982) (holding that plaintiff's status as a director did not prevent the application of the ADEA to plaintiff's position as an employee), cert. denied, 464 U.S. 819 (1983).  To the extent that Sempier on remand pursues relief related to his status as a director, this issue should be resolved by trial on the basis of the parties' proof of his functions at J & H in that capacity.

821 F.2d 200, 205 (3d Cir. 1987), cert. denied, 484 U.S. 1019 (1988).

                              III

        Without holding that Sempier failed to establish a prima facie case, the district court questioned whether Sempier made out a prima facie case of discrimination.  The district court doubted that Sempier had shown that he was qualified to work as the Chief Administrative Officer of J & H and doubted that he was replaced by a sufficiently younger employee to raise an inference of age discrimination.

        We note however that the prima facie case under the McDonnell Douglas-Burdine pretext framework is not intended to be onerous.  Burdine, 450 U.S. at 253.  The prima facie case merely "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors."  Furnco Construction Co. v. Waters, 438 U.S. 567, 577 (1978).

A.

We determine a plaintiff's qualifications for purposes
of proving a prima facie case by an objective standard. Weldon
v. Kraft, Inc., 896 F.2d 793, 798 (3d Cir. 1990); Jalil v. Avdel
Corp., 873 F.2d 701, 707 (3d Cir. 1989), cert. denied, 493 U.S.
1023 (1990). "[W]hile objective job qualifications should be
considered in evaluating the plaintiff's prima facie case, the
question of whether an employee possesses a subjective quality,
such as leadership or management skill, is better left to"
consideration of whether the employer's nondiscriminatory reason
for discharge is pretext. Weldon, 896 F.2d at 798. "Thus, to
deny the plaintiff an opportunity to move beyond the initial
stage of establishing a prima facie case because he has failed to
introduce evidence showing he possesses certain subjective
qualities would improperly prevent the court from examining the
criteria to determine whether their use was mere pretext." Id.
at 798-99.

Here, the district court misapplied this rule when it
evaluated Sempier's qualification by reference to J & H's
subjective criticism that Sempier lacked "management oriented"
skills and leadership ability. App. 895. Sempier had the
objective experience and education necessary to qualify as a
viable candidate for the positions he held. He had held
executive level positions at J & H for over twenty years.

Sempier also relied on the affidavit and depositions of
Hatcher, J & H's chairman. Hatcher had testified that he had
been satisfied with Sempier's performance. App. 895. In

response to this record, the district court observed, "[a]lthough it would be unusual for a corporation to place an unqualified individual in an executive position, it is not unimaginable." App. 896-97. In so stating, the district court failed, as required on summary judgment, to consider the evidence in the light most favorable to Sempier, the nonmoving party. See Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993); Gray v. York Newspapers, Inc., 957 F.2d 1070, 1077 (3d Cir. 1992); Chipollini, 814 F.2d at 900. Indeed, the district court apparently inferred that Sempier was unqualified for the position he held.

Contrary to the inference of the district court, if we consider the evidence in the light most favorable to Sempier, the record of his twenty years employment as an executive, his record as Comptroller and then Treasurer of J & H, his election to the Board on two occasions, and his appointment as Chief Financial Officer and then as Chief Administrative Officer leads to the almost inevitable inference that he was qualified for the position from which he was discharged. As we have said in a similar context, "[t]hus, [plaintiff's] satisfactory performance of duties over a long period of time leading to a promotion clearly established his qualifications for the job." Jalil, 873 F.2d at 707. Sempier's qualifications therefore satisfy the second prong of the prima facie case that Sempier was charged with establishing, thus putting to rest the doubts raised by the district court.

B.

To complete his prima facie case, Sempier does not need to produce compelling evidence or conclusive proof that J & H's adverse employment decision resulted from age discrimination. Chipollini, 814 F.2d at 900. Rather he may point to a sufficient age difference between himself and his replacement such that a fact-finder can reasonably conclude that the employment decision was made on the basis of age. Maxfield v. Sinclair Intern'l, 766 F.2d 788, 792 (3d Cir.), cert. denied, 474 U.S. 1057 (1985). Nor is there any particular age difference that must be shown. Id. Different courts have held, for instance, that a five year difference can be sufficient, Douglas v. Anderson, 656 F.2d 528, 533 (9th Cir. 1981), but that a one year difference cannot. Gray, 957 F.2d at 1087.

The district court in this case considered only the four year age difference between Sempier and Carpenter, who had taken over some of Sempier's responsibilities. However, we are not limited to considering only Sempier's final replacement. Four months prior to the date that Carpenter became responsible for Human Resources and Professional Development at J & H, a substantial portion of Sempier's other functions were transferred to Alan Page. Page is well over ten years younger than Sempier. App. 711. The combined differences in age between Sempier on the one hand and Page and Carpenter on the other is clearly

sufficient to satisfy the fourth prong of a prima facie case by
raising an inference of age discrimination.[5]

IV

A.

Having concluded that the record is more than
sufficient to dispel the district court's doubts as to Sempier's
prima facie case, we turn now to consider the evidence of J & H's
alleged reasons for Sempier's discharge. As we earlier stated,
after the plaintiff has established a prima facie case, the

---

[5]. J & H contends that we cannot consider the transfer of
Sempier's duties to Page because it occurred outside of the 300
day period for filing a separate claim of age discrimination.
J & H's Brief at 38; see 29 U.S.C. § 626(d) (providing a 300 day
period in which to file an administrative charge).

The argument is disingenuous. J & H relies on the
incremental removal of Sempier's management responsibility over
Management Information Systems to justify Sempier's dismissal;
however, J & H asks us to limit our consideration of Sempier's
case to the facts that fall within the 300 days immediately prior
to when Sempier filed his administrative charge. Although
Carpenter was the last person to assume any of Sempier's
responsibilities, the process that led to Sempier's eventual
discharge began with the transfer of MIS authority from Sempier
to Page.

The statute of limitations for filing a charge of
discrimination may have barred our consideration of the transfer
of MIS authority to Page if that was Sempier's cause of action,
but it does not prevent us from considering that event in order
to determine whether Sempier has raised an inference of age
discrimination as a part of his prima facie case. See United
Airlines, Inc. v. Evans, 431 U.S. 553, 558 (1977) (barring a
separate claim of discrimination, but permitting use of the prior
events as evidence to prove a case of discrimination based on a
separate claim); Colgan v. Fisher Scientific Co., 935 F.2d 1407,
1420-21 (3d Cir.), cert. denied, 112 S. Ct. 379 (1991).

employer must produce evidence of a nondiscriminatory reason to rebut the presumption of discrimination created by the prima facie case. Hicks, __ U.S. at __, 113 S. Ct. at 2747; Chipollini, 814 F.2d at 897.

Here, J & H has presented two reasons. First, J & H states that it terminated Sempier because his company duties no longer justified retaining him in his position. Second, it contends that Sempier performed those duties poorly. J & H attempted to establish each of these justifications through affidavits of J & H executives and directors. As we understand the record, J & H's nondiscriminatory reasons for Sempier's discharge come down to this: Sempier performed so poorly that almost all of his responsibilities at the firm were transferred to others, leading ultimately to Sempier's discharge.

J & H produced the affidavits of two directors, who had previously supervised Sempier, reflecting the directors' discontent with Sempier's work. App. 778-79, 783-84 (affidavit of Hecken); App. 726-32 (affidavit of Johnson). Additionally, Hatcher's affidavit averred that many directors did not regard Sempier highly and that Hatcher had used his influence to have Sempier elected to the Board against the other directors' wishes. App. 365, 369-70. To corroborate these assertions, J & H included a consultant's report that criticized the operations of the finance department during 1985-1987 when Sempier served as CFO. App. 738-749. Finally, the company produced documents disclosing that Sempier received less compensation from the

directors' merit compensation pool than some of the other directors who held comparable positions.

B.

On the other hand, Sempier claims that these allegations of poor performance are not worthy of credence and are no more than a pretext for discrimination.  The Supreme Court, in Saint Mary's Honor Center v. Hicks, __ U.S. __, 113 S. Ct. 2742 (1993), recently clarified the showing of pretext that a plaintiff must make to win a discrimination case.  Rejection of the employer's nondiscriminatory explanation does not compel a verdict in favor of the employee, but it permits the trier of fact to infer discrimination and find for the plaintiff on the basis of the allegations of discrimination in his prima facie case.  Hicks, __ U.S. at __, 113 S. Ct. at 2749; Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994); Seman v. Coplay Cement Co., 26 F.3d 428, 433 (3d Cir. 1994).  "The factfinder's disbelief of the reasons put forward by the [employer] . . . may, together with the elements of the [employee's] prima facie case, suffice to show intentional discrimination."  Hicks, __ U.S. at __; 113 S. Ct. at 2749.

Accordingly, "a plaintiff who has made out a prima facie case may defeat a motion for summary judgment by either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."

<u>Fuentes</u>, 32 F.3d at 764 (emphasis in original).  If the plaintiff produces sufficient evidence of pretext, he need not produce additional evidence of discrimination beyond his prima facie case to proceed to trial.  <u>Id.</u>

Pretext is not demonstrated by showing simply that the employer was mistaken.  <u>Ezold v. Wolf, Block, Schorr and Solis-Cohen</u>, 983 F.2d 509, 531 (3d Cir. 1992), <u>cert. denied</u>, 114 S. Ct. 88 (1993).  Instead the record is examined for evidence of inconsistencies or anomalies that could support an inference that the employer did not act for its stated reasons.  <u>Josey v. John R. Hollinsworth Corp.</u>, 996 F.2d 632, 638 (3d Cir. 1993).

Thus, we turn to the record to determine whether Sempier has produced sufficient evidence to allow a jury to find that J & H did not terminate him for poor performance.  Sempier emphasizes three evidentiary threads which create a genuine issue of material fact.  He first points to statements in his own affidavit, in Hatcher's affidavit, and in Hatcher's deposition testimony that his performance was satisfactory.  App. 321, 325 (Sempier); App. 363-65 (Hatcher); App. 797 (Hatcher).  The district court found that Hatcher's additional statement that other directors did not agree with Hatcher's favorable assessment undermined the credibility of Hatcher's assertions of satisfactory performance.  While we may or may not find Sempier's self evaluation and Hatcher's assessments of Sempier's performance to be compelling evaluations of Sempier's work, it is neither our role nor the district court's role on summary judgment to compare the testimony of various affiants and decide

who is credible.  Chipollini, 814 F.2d at 901; Josey, 996 F.2d at 637.

The district court, citing Billet v. CIGNA Corp., 940 F.2d 812 (3d Cir. 1991), also concluded that Sempier's self evaluation was meaningless because only J & H's evaluation of Sempier's performance was at issue.  Billet states that the inquiry into pretext centers upon the employer's beliefs and not the employee's own perceptions.  Id. at 825 ("However, [plaintiff's] view of his performance is not at issue; what matters is the perception of the decision maker.").  Nonetheless, Billet does not stand for the proposition that the employee's belief that his performance was satisfactory is never relevant.  Billet concluded that the employee's assertions of his own good performance were insufficient to prevent summary judgment where the employer produced performance reviews and other documentary evidence of misconduct and insubordination that demonstrated poor performance.  Id. at 818-22.

Where, as here, Sempier asserts not only that he performed well but that he never received any unfavorable criticism that his performance was poor or inadequate, the jury could conclude that J & H's failure to fault Sempier's performance for the twenty years prior to the negotiations leading to his discharge makes suspect its post hoc assertions of poor performance.  This is especially true when J & H has failed to produce any other evidence of poor performance or make specific allegations of Sempier's deficiencies.

Sempier next points to two formal performance evaluations from 1988 and 1989 in which Hecken, Sempier's supervisor, wrote that Sempier's performance was satisfactory. App. 308-19. In considering these evaluations, the district court stated, solely on the basis of Hecken's affidavit, that "[t]he evaluations were a first attempt by Defendant to open the lines of communication between lower level directors and the senior members of the board to whom they reported. Viewed in this light, they are of little value in determining Plaintiff's true level of performance." App. 906. In so stating, the district court ignored the testimony of Hatcher at his deposition that any critical comments concerning Sempier's performance should be recorded in the performance evaluations. App. 799. Hatcher also said that the compensation committee had previously used the evaluations in determining directors' compensation. App. 824-26. On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative.

Finally, Sempier points to the coercive early retirement program that J & H instituted shortly before it forced Sempier's resignation. J & H documents showed that the company instituted this program to generate a significant number of retirements largely through monetary incentives. The district court correctly concluded that the use of an early retirement program to dismiss redundant or underperforming employees is not by itself a violation of the ADEA. See Gray v. York Newspapers, 957 F.2d 1070, 1080-81 (3d Cir. 1992); Colgan v. Fisher Scientific Co., 935 F.2d 1407, 1422 (3d Cir.), cert. denied, 112

S. Ct. 379 (1991).  On the other hand, an early retirement program designed to force employees who reach a senior age to leave or face significant pressure to resign or retire might itself create an inference of age discrimination.  Gray, 957 U.S. at 1081 (citing Henn v. National Geographic Soc'y, 819 F.2d 824, 826, 828-29 (7th Cir.), cert. denied, 484 U.S. 964 (1987)).  It is impermissible to force older employees to choose between retirement or termination in an effort to eliminate older workers on account of their age.

The record clearly discloses that Hatcher told Sempier in no uncertain terms that he could either retire, face continuing pressures to retire, or be terminated.[6]  The record also reflects a mandatory policy at J & H that directors must retire at set intervals corresponding to age.  Later, after the company learned that Sempier had sought legal counsel, Olsen, J & H's Chairman, told Sempier to pack his office and leave. While this evidence does not itself establish age discrimination, a jury might reasonably determine from these events that J & H offered Sempier early retirement as an effort to remove him because of his age and not because of poor performance.

In cases such as the present one, the question for the court is whether the record "could support an inference that the employer did not act for non-discriminatory reasons, not whether

_____

[6].  In the April meeting at which Hatcher recommended early retirement, Sempier recites that Hatcher told Sempier that unnamed J & H managers "would let me [Sempier] rot, would cut my balls off and otherwise make it unpleasant for me to stay."  App. 302.

the evidence <u>necessarily</u> leads to that conclusion that the employer did act for discriminatory reasons."  <u>Chipollini</u>, 814 F.2d at 900 (emphasis in original); <u>see also</u> <u>Fuentes</u>, 32 F.3d at 764 (stating that the plaintiff need not show more than that the employer's articulated reasons were implausible to survive summary judgment).  When the evidence is read in the light most favorable to Sempier, a jury could reasonably find that J & H did not terminate him because of poor performance but rather discharged him because of his age.

V

To recap, once Sempier had made out a prima facie case of age discrimination, a presumption arose that J & H had discriminated against him.  <u>Burdine</u>, 450 U.S. at 254.  J & H dispelled that presumption by coming forward with a nondiscriminatory reason for Sempier's discharge, leaving nothing but the permissible inference of discrimination created by the prima facie case.  <u>Hicks</u>, __ U.S. at __; 113 S. Ct. at 2748-49.  Sempier's attack on J & H's stated reasons for his discharge leaves us with the paradigmatic case in which each party has produced testimony and evidence that conflicts on the ultimate issue -- whether Sempier was discharged for poor performance or because of his age.  The resulting conflict must be resolved by a jury and cannot be resolved on summary judgment.  Thus, the summary judgment entered in favor of J & H must be reversed.[7]

_____

[7]. Sempier also raises as error the district court's denial of a partial summary judgment in his favor on the issue of liability.

VI

In addition to challenging the district court's order
which granted summary judgment to J & H, an order which we now
hold must be reversed, Sempier also complains that the district
court abused its discretion in ruling on his discovery efforts.
In so doing, Sempier contends that he was prevented from
marshalling additional evidence establishing that J & H's
proffered reason for his discharge was pretextual.[8]

We normally do not become involved with "nitty gritty"
rulings on discovery matters.  Nor do we generally engage in
exercises to determine whether a party's interrogatories are
relevant or are unduly burdensome.  This appeal, however,
requires that we review the actions taken by the magistrate judge
and the district court judge with respect to discovery sought and
answered by the parties.  While we will not examine each jot and

(..continued)
Sempier argues that J & H presented no evidence of his poor
performance.  As we have discussed in text, the record reflects
that both Sempier and J & H have adduced conflicting evidence
over the reason for his discharge.  This resulting conflict could
not be resolved by summary judgment in Sempier's favor.

[8].  Sempier strongly disputes J & H's contention that he had
chosen to resist J & H's renewed motion for summary judgment
without completing the depositions that had been scheduled.
Sempier claims that the documents he sought from J & H were
essential in order to conduct his remaining depositions.  He
asserts that the district court for that reason alone should have
denied J & H's motion for summary judgment and should have
permitted Sempier to complete his discovery.  (Sempier Reply
Brief at p. 23.)

tittle of the discovery process, it is important to our analysis that some background be furnished.

Sempier's complaint was filed in April 1992. In June 1992, Sempier served his first set of interrogatories and a request for production of documents. In July 1992, Sempier served a second set of interrogatories with a second request for production of documents. Unfortunately, not all of the interrogatories that were served have found their way into the record, and thus, into the appendix. We have examined those that have been reproduced in the appendix, and we find it difficult to understand how the magistrate judge could have condoned the answers given by J & H. Moreover, we are perplexed by the failure of the magistrate judge or the district court judge to compel responsive answers to the interrogatories -- almost all of which appear to us to be relevant and directed to the issues of Sempier's employment, performance and relationship with J & H.

For example, Interrogatory No. 36 sought the name of each and every person who had supervision and/or control over Sempier from January 1, 1986 through the termination of Sempier's employment. It also sought, with respect to each such supervisor identified, the job title, the department supervised, the duties and responsibilities of the job, the date on which he or she assumed the supervisory position, and, if the individual was not still employed, the date and reason of termination and the last known address. True, that interrogatory sought as well the date of hire, date of birth and educational background, but those three inquiries, if not deemed relevant in the district court's

judgment, could have been excised and the remainder of the interrogatory answered.  Yet J & H objected to the interrogatory on the grounds that it was "overbroad, unduly burdensome, and exceeding the scope of permissible discovery."  J & H then referred Sempier to a J & H Position Statement which does not even appear to be part of the record.

Again, Interrogatory No. 44 asked J & H if it voluntarily terminated the employment and/or relationship of Sempier with J & H.  J & H's response reads:  "Defendant refers plaintiff to pages 3 through 17 of the J & H Position Statement." The following interrogatory, Interrogatory No. 45, sought the dates on which the decision to terminate Sempier was made, and J & H's response was "See Interrogatory No. 44."  Interrogatory No. 46 sought the factual basis for J & H's decision to terminate Sempier and/or the relationship of Sempier with J & H.  The answer given by J & H:  "Defendant refers plaintiff to the J & H Position Statement."  The other interrogatories which we have reviewed -- all seemingly relevant -- have been answered in much the same manner.  All of J & H's answers disregard the requirements of the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 33(a) (requiring separate and complete answers unless specific objections are provided); 26(b) (defining the scope of discovery) (1993 version).[9]

_____

[9]. Lead counsel for J & H is apparently the New York law firm of Sullivan & Cromwell.  Perhaps this accounts for the lack of familiarity with New Jersey Federal Court practice.  We note, however, that J & H had local counsel.  It is a matter of concern to us that the discovery practice in this case was so badly abused when at the least, local counsel had to have recognized

Without dwelling further on this subject, we observe that the magistrate judge did not compel the answers which Sempier sought. Rather, he relieved J & H from answering the various discovery requests and instructed Sempier to issue a third set of interrogatories and a third document request. The latter two discovery requests were no more answered than the earlier ones. In lieu of compelling answers to the third set of interrogatories served by Sempier, the district court instructed J & H to answer a four question "Bill of Particulars."

Against this background, we consider Sempier's arguments. Under the Federal Rules of Civil Procedure and our jurisprudence, district courts have broad discretion to manage discovery. See, e.g., Walter v. Holiday Inns, Inc, 985 F.2d 1232, 1237 n.4 (3d Cir. 1993) (allowing over a one year delay in the production of documents is not an abuse of discretion); Beard v. Braunstein, 914 F.2d 434, 446 (3d Cir. 1990) (affirming monetary sanction for failure to answer interrogatories); Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1146 (3d Cir. 1990) (affirming district court order striking the pleadings for failure to answer interrogatories). Nonetheless, the district court's discretion has boundaries, and in particular, we frown upon unnecessary discovery limitations in Title VII, and hence ADEA, cases. See Trevino v. Celanese Corp., 701 F.2d 397, 405 (5th Cir. 1983). In such cases, other courts have refused, and now we refuse, "to

(..continued)
the need to conform to the standards of discovery practice which have long been established in the District of New Jersey.

allow procedural technicalities to impede the full vindication of guaranteed rights." Id. at 406. A plaintiff in an ADEA case, as Sempier is here, should not be hamstrung by the district court in limiting his discovery. In substituting a "Bill of Particulars" for those means of discovery authorized by the Federal Rules of Civil Procedure, the district court here far exceeded the outermost limits on its discretion.

Since 1938, civil discovery has been an attorney-initiated, attorney-focused procedure. The vast majority of federal discovery tools operate, when used properly, almost entirely without the court's involvement. See Fed. R. Civ. P. 26(f) (requiring the parties to devise and submit a discovery plan); Fed. R. Civ. P. 30 ("[A] party may take the testimony of any person, including a party, by deposition upon oral examination without leave of court."); Fed. R. Civ. P. 34(b) (production of documents); cf. Fed. R. Civ. P. 35 (providing for physical examinations only by leave of the court); see also William Schwartzer, The Federal Rules, the Adversary Process, and Discovery Reform, 50 U. Pitt. L. Rev. 703, 714-16 (1989).

Indeed under the recent amendments to Federal Rule of Civil Procedure 26(a), which became effective December 1, 1993 in the District of New Jersey, a party must provide discovery "without waiting [for] a discovery request." Under this scheme, when civil litigation proceeds smoothly, the parties conduct discovery with minimal interference from and minimal appeal to the court. Through the discovery process, even before the amendments became effective, the attorneys obtain answers to

questions that they feel are relevant to the issues if not determinative of the issues. 8A Charles Allen Wright & Arthur P. Miller, Federal Practice and Procedure § 2162 (1970). Nowhere in the process is the district court authorized to initiate its own questioning or to seek documents for itself. See John H. Langbein, The German Advantage in Civil Procedure, 52 U. Chi. L. Rev. 823, 827–30 (1985) (noting the difference between civil law procedure in which judges initiate the investigation and common law procedure in which the parties conduct the investigation).

When the parties stray from this course, Rule 37 provides the court with tools to give the litigants new and proper bearings. A court may compel answers to interrogatories or deposition questions, compel the production of documents, or conversely, grant protective orders. Fed. R. Civ. P. 37; Fed. R. Civ. P. 26(b)(5)(c). If these measures fail, a court may order facts established, forbid the introduction of evidence, strike the pleadings, file a default judgment, dismiss the action, or hold a party in contempt of court. Fed. R. Civ. P. 37(b); see also National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642 (1976) (upholding dismissal of a claim for discovery violations); Quinter v. Volkswagen of America, 676 F.2d 969 (3d Cir. 1982) (affirming an order holding a party in contempt for violation of discovery procedures). However, none of the weapons in this formidable arsenal include the wholesale substitution of court-engineered discovery.

The district court was evidently not content with the contents of its discovery arsenal. Rather, it abandoned the

structure and command of the Rules to revive a procedural device abandoned in civil practice forty-five years ago.  See Singer Manufacturing Co. v. Axelrod, 16 F.R.D. 460, 461 (S.D.N.Y. 1954) (noting the elimination of the "Bill of Particulars" in favor of interrogatories in 1948); Wright & Miller, supra § 2167 (1970 & supp. 1994) (stating that Fed. R. Civ. P. 33 replaced the "Bill of Particulars" in equity in 1948 without lament).  Although still used in criminal matters, a "Bill of Particulars" has not graced the shores of federal civil discovery since the 1950s.  8 James Wm. Moore, Moore's Federal Practice ¶ 7.06[1] (2d ed. 1994).  Even in criminal matters, a "Bill of Particulars" is not generally considered a discovery device.  Id. (citing among other cases United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985)).  In this case, it was not only an unwelcome and inappropriate incursion by the district court into the parties' dispute, but it severely trenched upon the Rules of Civil Procedure which have been crafted to provide information as to matters relevant to the issues disputed.  Fed. R. Civ. P. 26(d)(1).

Sempier had served his interrogatories in compliance with Federal Rule of Civil Procedure 33.  The Rule provides, "[e]ach interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable."  J & H believed the interrogatories were objectionable and stated its objections.  Sempier sought to compel answers.

The court could have denied the discovery on the ground that it was privileged, burdensome, duplicative, or otherwise outside of the scope of discovery. Fed. R. Civ. P. 26(b). It could have compelled answers and awarded attorney's fees and/or sanctions. Fed. R. Civ. P. 37(b). It did none of these things nor did it comply with its obligation to consider and rule upon each interrogatory to which J & H objected. See Nestle Foods Corp. v. Aetna Casualty & Surety Co., 135 F.R.D. 101, 109-112 (D.N.J. 1990); Robbins v. Camden City Bd. of Educ., 105 F.R.D. 49, 57-60 (D.N.J. 1983). Rather than rule upon the objections, the district court decided that "[the] Magistrate Judge . . . provided a mechanism (bill of particulars) for further discovery regarding the precise issue outlined in this Court's September 7, 1993 Order." App. 611.

The district court may have disliked its obligation to examine each interrogatory and review the magistrate judge's ruling. Regardless of its feelings, the district court, guided only by its own discretion and determination of what is important or relevant, could not rewrite a party's questions and in effect serve its own set of interrogatories. When the court took upon itself to author the questions being asked, it virtually became a participant in the parties' controversy in a manner inconsistent with fundamental conceptions of the role of a judge in our common law system.

In this case, the district court reformulated Sempier's interrogatories into four broad questions about Sempier's performance. The magistrate judge reframed specific requests

pertaining to the reasons considered by J & H, and the reasons upon which J & H actually relied to terminate Sempier, into a vague question, "[w]hy were Plaintiff's job responsibilities reassigned?"  Pertinent and direct interrogatories, that were propounded by Sempier, sought the dates of conversations regarding Sempier's performance and the names of the participants in those discussions.  Those interrogatories were replaced by the district court with a vague and general "Bill of Particulars."  Because the district court's questions were, with one exception, general, nonspecific, and broad, the resulting answers, to the extent that they answered the questions at all, were uninformative and of little value.  Sempier had good reason to draft specific interrogatories and had a right to expect correspondingly specific answers.  The district court's substitution of its own work product denied Sempier this opportunity.

We have examined the Supplemental Bill of Particulars (App. 766-772) which contains the questions framed by the magistrate judge and the district court judge, and we have examined closely J & H's answers.  Those answers can best be described as an attempt, if not to outwit, then to frustrate all legitimate efforts to furnish information to an adversary.[10]  Moreover, whereas Federal Rule of Civil Procedure 33 provides that interrogatories must be answered under oath and thus may be evidentiary, there is no such provision in the Federal Rules of

_____

[10].  See note 9 supra.

Civil Procedure for a "Bill of Particulars." Indeed, there is no provision at all for "Bills of Particulars" -- and for good reason. As we have noted, "Bills of Particulars" were replaced by the discovery rules of the Federal Rules of Civil Procedure. Wright & Miller, supra § 2167.

The district court's action was unauthorized by the Federal Rules of Civil Procedure and in violation of the principles of our jurisprudence. The Federal Rules of Civil Procedure, which must obtain Supreme Court and Congressional approval, not only prescribe the procedures to be followed by counsel, but they also prescribe the Rules under which the courts operate. See Umbenhauer v. Woog, 969 F.2d 25, 32 (3d Cir. 1992) ("Neither we, the Department of State, nor the Administrative Office of the United States Courts possess the authority to circumvent, ignore or deviate from the Federal Rules of Civil Procedure, which were approved by the Judicial Conference of the United States, the Supreme Court of the United States, and Congress.") By venturing so far outside the parameters set by the Rules, the court abused its discretion.

Our discussion and holding here does not leave the district court powerless to manage the discovery difficulties presented by this and similar cases. On the contrary, the district court has considerable authority and discretion by which to resolve discovery disputes. Indeed, if discovery has reached an impasse or a nonproductive stage either through counsel's obstinacy, intransigence, or even incompetence, the district court can always, through appropriate intervention, suggest the

proper manner in which questions should be asked and the answers furnished. A district court's creativity in this respect is unrestricted, although it cannot, of course, disregard the commands of the Federal Rules of Civil Procedure or, as in this case, substitute a "Bill of Particulars" for a party's relevant discovery. It can, however, always give counsel guidance and direction as to the manner in which discovery should proceed.

If, after an examination of a party's interrogatories, the district court determines that the interrogatories are inappropriate, the court can refuse to compel answers. If a party is unable to draft satisfactory interrogatories after a reasonable time for discovery has concluded, the court can limit further discovery. If the court feels either party was acting in bad faith, it can impose sanctions. Certainly, if a party, without justification, refuses to answer interrogatories in the manner required by Federal Rule of Civil Procedure 33, the court can compel answers under threat of sanctions. Any or all of these options could have been employed in this case. Any and all of these options would have received substantial deference upon review.

                              VII

We will reverse the summary judgment of the district court dated March 9, 1994 and remand. On remand, the district court is directed to vacate the magistrate judge's order of August 7, 1993 and to vacate its own order of November 3, 1993 which approved and modified a "Bill of Particulars." The

district court is also directed to permit and schedule additional appropriate and adequate discovery pursuant to the Federal Rules of Civil Procedure so that further proceedings, including trial, may be conducted consistent with the foregoing opinion.[11]

---

[11]. The district court's order of March 9, 1994 dismissed Counts Four through Six without prejudice to Sempier proceeding on those counts in state court. Those counts involved state law contract and corporate law causes of action. The record before us is accordingly silent as to those matters. Nor do we know if those claims are proceeding in state court. It will be for the district court on remand to ascertain and resolve the status of those claims.