

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-8-2003

# Mannella v. Allegheny

Precedential or Non-Precedential: Non-Precedential

Docket 02-2448

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Mannella v. Allegheny" (2003). *2003 Decisions.* Paper 565.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/565

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2448

_____

JEANNINE MANNELLA;
FRANK MARCIW, her husband,

Appellants

v.

COUNTY OF ALLEGHENY; MARTIN SCHMOTZER

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 98-cv-00979)
District Judge: Honorable Robert J. Cindrich

_____

Argued March 14, 2003

Before: BECKER, Chief Judge,* RENDELL and AMBRO
Circuit Judges.

(Filed May 6, 2003)

VINCENT A. COPPOLA, ESQUIRE (ARGUED)
Pribanic & Pribanic
513 Court Place
Pittsburgh, PA 15219

Counsel for Appellants

_____

*Judge Becker completed his term as Chief Judge on May 4, 2003.

CHARLES P. MCCULLOUGH, ESQUIRE
County Solicitor
CAROLINE LIEBENGUTH, ESQUIRE (ARGUED)
Assistant County Solicitor
Allegheny County Law Department
300 Fort Pitt Commons Building
445 Fort Pitt Boulevard
Pittsburgh, PA 15219

Counsel for Appellees

_____

OPINION OF THE COURT
_____

BECKER, Chief Judge.

On February 2, 1996, Jeannine Mannella was terminated from her position as a bond counter in the Clerk of Courts of Allegheny County (the "County"). Asserting that gender discrimination motivated her dismissal, Mannella and her husband, Frank Marciw, filed a complaint against the County in the District Court on June 4, 1996, alleging, *inter alia*, a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, a deprivation of rights secured under the Fourteenth Amendment of the United States Constitution in violation of 42 U.S.C. § 1983, and a number of state constitutional and tort claims. After discovery, Mannella amended her complaint to allege a violation of the First Amendment by reason of political retaliation. With respect to the § 1983 claim, the District Court held that it was barred by the statute of limitations but reached the merits nonetheless. The Court then granted summary judgment in favor of the County on all

-2-

claims.

This appeal followed. Mannella contends that the doctrine of equitable estoppel should save her § 1983 claim from the statute of limitations bar because the Clerk of Courts misled her as to the true reason for her dismissal. During the course of discovery, Mannella identified a former employee of the Clerk of Courts who stated in an affidavit that Mannella was terminated because her father was the mayor of a town that did not support Joyce Itkin for the Clerk of Courts in the previous election; Itkin was the one who dismissed Mannella. The County responds that equitable estoppel is inappropriate because there is no evidence that the Clerk of Courts actively misled Mannella; rather, it maintains that cuts to the Clerk of Courts's budget and concerns about Mannella's attendance motivated her termination. We agree with the County that this case does not call for the application of equitable estoppel.

Mannella also argues that the Clerk of Courts's proffered reasons for her termination were pretextual. However, because she does not present any evidence that sufficiently supports this contention, the Court correctly granted summary judgment on the Title VII claim. Finally, Mannella contends that, after dismissing her federal claims, the District Court should have relinquished jurisdiction over her state constitutional law claims and dismissed them without prejudice. We disagree. The Court had supplemental jurisdiction over the state claims under 28 U.S.C. § 1367, and it was not an abuse of discretion to retain jurisdiction and dismiss them with prejudice together with the federal

claims.

## I.

Mannella worked in the Clerk of Courts of Allegheny County for more than fifteen years prior to her termination, twelve of which as a bond counter. In a letter dated February 1, 1996, Joyce Itkin, the Clerk of Courts, notified Mannella that effective February 2, 1996, her position would be "eliminated" in "order to accommodate present budget restrictions." [a73.] Noting that two other women were terminated on the same day but that a less-senior man retained his position as a bond counter, Mannella suspected that gender discrimination motivated her dismissal. On May 2, 1996, she filed a gender-related employment discrimination complaint with the Equal Employment Opportunity Commission ("EEOC").

In response to requests from the EEOC as to the justification for Mannella's termination, the Clerk of Courts prepared a memorandum for her solicitor detailing the reasons why Mannella was dismissed but William Malits, her male colleague with less tenure, was not. The memorandum explained that the Clerk of Courts was transferring the bail bond counter to another building and sought to keep it open 24 hours a day, 7 days a week. To that end, the Clerk of Courts interviewed the bond counters to determine whether they would willing to work on a swing shift. According to the memorandum, Mannella had concerns about "working longer hours and going to a swing shift, working 40 hour weeks, 52 weeks a year, exclusive of vacation." [a58.]

The memorandum also stated that recent cuts in the Clerk of Courts's budget would require one person on some shifts, thus making attendance critical; this is because someone must always be available to allow persons under arrest to post bond. The Clerk of Courts explained that Mannella's attendance record was spotty, and that she had missed a number of days in the months before she was terminated. By contrast, Malits "demonstrated overall perseverance, not only in his work as a bond counter clerk, but was very instrumental in the design, organization and opening of the new bond counter office." [a59.] The Clerk of Courts also disputed Mannella's assertion before the EEOC that she held the position of "bond counter manager" because according to the Departmental Position Report, that title did not exist at the time. [a58.]

Following the receipt of a right-to-sue letter from the EEOC, Mannella commenced the instant action in the District Court. Her complaint alleged that the County violated her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Fourteenth Amendment of the United States Constitution, actionable pursuant to 42 U.S.C. § 1983. She also raised a number of state law claims, including a violation of the Pennsylvania Human Relations Act, 43 P.S. § 955(a), intentional infliction of emotional distress, and loss of consortium, together with her husband, Frank Marciw. After the completion of discovery, Mannella filed a second amended complaint adding First and Fourteenth Amendment violations to her § 1983 claim, along with analogous violations of the Pennsylvania Constitution.

The County moved for summary judgment on all claims, which the District Court granted. The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and review the District Court's decision to grant summary judgment *de novo*. *Sempier v. Johnson & Higgins,* 45 F.3d 724, 727 (3d Cir. 1995).

## II.

The District Court concluded that Mannella's § 1983 claim was barred by the statute of limitations. Because courts must borrow the statute of limitations from analogous state causes of action for § 1983 claims, the Court properly applied the two-year period derived from Pennsylvania law. *Nelson v. County of Allegheny*, 60 F.3d 1010, 1012 (3d Cir. 1995). The Court noted that Mannella filed her complaint on June 4, 1998, more than two years after she was terminated from her job. Even though the additional claims raised in the second amended complaint relate back to the date the original complaint was filed, these claims were also untimely. Despite this conclusion, the Court reached the merits of the § 1983 claim and ruled adversely to Mannella.

Mannella argues that, to whatever extent the statute of limitations bar governed the Court's decision, the Court erred in not applying the doctrine of equitable estoppel to preserve her claim. In *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994), we identified "three principal, though not exclusive" situations where equitable estoppel might be applied properly: "(1) where the defendant has actively

misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Id.* at 1387. Mannella contends that the first situation – the defendant actively misleading the plaintiff – applies to her case.

Her argument relies on an affidavit from Robert Martine, a former employee of the Clerk of Courts, who stated that he was "personally aware that Jeannine Mannella was chosen for termination" because her father was the mayor of a town that "did not support Joyce Itkin," the Clerk of Courts who terminated Mannella, "in the prior election." [a32.] Martine also represented that he knew "from first hand knowledge that Joyce Itkin stated that we could defend Ms. Mannella's dismissal on the basis that she had been absent from the office . . . and, therefore, [Itkin] expected no retribution from [Mannella.]" [a32.] He further stated that Itkin told him that the real reason for Mannella's termination was to let it be known "within the Democratic party that those persons and communities that supported her would be treated differently than those who did not support her." [a31.]

We do not believe that the belated discovery of Martine's affidavit is sufficient to justify the application of equitable estoppel. In employment discrimination cases, equitable tolling "may excuse the plaintiff's non-compliance with the statutory limitation provision when it appears that (1) the defendant actively misled the plaintiff respecting the reason for the plaintiff's discharge, and (2) this deception caused the plaintiff's non-

compliance with the limitations period." *Oshiver*, 38 F.3d at 1387. Mannella cannot establish either of these necessary conditions.

First, Martine's affidavit does not contradict the Clerk of Court's proffered reason for terminating Mannella (the restrictions in the Clerk of Court's budget), nor does the affidavit dispute the distinctions the Clerk of Courts identified between Mannella and William Malits, the retained bond counter, in its memorandum to the EEOC. Second and even more important, Mannella cannot point to anything the Clerk of Courts did that caused her not to exercise a minimal level of diligence by interviewing former employees during the two years before the statute of limitations ran. Indeed, Martine's affidavit is dated March 14, 2002 – more than four years after Mannella was terminated. When pressed at oral argument to explain why Martine was not discovered earlier, Mannella failed to assert a compelling justification, let alone lay any blame of active deception on the Clerk of Courts for this lengthy delay.

We therefore conclude that it would not be appropriate to apply equitable estoppel to save Mannella's § 1983 claim from the statute of limitations bar. Accordingly, we need not reach the merits of the claim and will affirm the District Court's grant of summary judgment with respect thereto.

## III.

Mannella also contends that the District Court erred in granting summary judgment on her Title VII claim of gender discrimination. The County does not dispute

that Mannella presents a prima facie case of discrimination that survives summary judgment, but rather argues that it has proffered legitimate, nondiscriminatory reasons for her termination. Thus, the sole question on appeal is whether Mannella has produced evidence "demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence," such that the real reason was on account of gender. *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). She does not meet this burden.

As noted above, the termination letter from the Clerk of Courts stated that Mannella was fired due to "budget restrictions" that necessitated the elimination of her position. [a73.] Additionally, in its memorandum to the EEOC, the Clerk of Courts explained that Malits was retained instead of Mannella because of the need for consistent attendance and flexible scheduling when the bond counter became a 24 hour/7 days a week operation. The Clerk of Courts was also concerned about Mannella's attendance record and eagerness to work on a swing shift, especially when compared with Malits's "overall perseverance" in the opening of the new bond counter office. [a58–59.] Finally, the Clerk of Courts disputed Mannella's assertion that she was the "bond counter manager," and thus Malits's superior, by noting that the Departmental Position Report did not list such a title at that time. [a58.]

In her brief, Mannella concedes that she does "not challenge whether any such

budget reduction in fact occurred." Rather, she criticizes the reasons the Clerk of Courts identified in its memorandum for why Mannella was chosen for elimination instead of Malits. Without any evidence of actual discrimination, Mannella attempts to "point to evidence establishing a reasonable inference that the employer's proffered explanation is unworthy of credence." *Sempier,* 45 F.3d at 728. However, she fails to meet this burden for the following reasons.

First, Mannella disputes the Clerk of Courts's contention that she was not the "bond counter manager" by presenting her County-issued identification card that stated this as her title [a69] as well as an affidavit from the Clerk of Courts who preceded Itkin, which claimed that Mannella had been promoted to that position. This is, however, immaterial because Mannella's title was never an issue in the Clerk's decision to choose her for elimination.

Second, Mannella submits that the statement in her affidavit that she "was willing to work any shift, but that [she] preferred the day shift if that were possible," [a25] rebuts the Clerk of Courts's claim that Mannella was hesitant to work a swing shift. But this does not seem to be all that different from the Clerk of Courts's statement in her memorandum that "[t]here was concern from Ms. Mannella about working longer hours and going to a swing shift." [a58.] Contrary to Mannalla's assertions, the Clerk of Courts never stated that Mannella was *unwilling* to work flexible hours, but rather that she expressed greater concern about it than Malits.

Finally, Mannella picks apart the number of days that the Clerk accused Mannella of missing in the months before her termination. She notes that a number of these days were holidays and that Mannella was entitled to use her vacation and sick days. Nevertheless, the County submits that the reason that Mannella was terminated was due to budget reductions, not her absenteeism. It is this record of absenteeism, among other factors, that differentiated Mannella from Malits and led to the Clerk of Courts choosing her for termination in response to the budget reductions.

In sum, Mannella fails to present evidence that would enable "a reasonable fact finder" to find the Clerk of Courts's reason for termination "unworthy of credence." *Fuentes v. Perskie*, 32 F.3d at 765. We will therefore affirm the District Court's grant of summary judgment dismissing the Title VII claim.

**IV.**

Lastly, Mannella submits that after dismissing her federal claims, the District Court should have relinquished jurisdiction over the state constitutional law claims as a matter of comity and because there were "questions of state law that remained unsettled." Instead, the Court reached the merits of these claims, alleged violations of Article I, §§ 7, 26, and 28 of the Pennsylvania Constitution, and concluded that for the same reasons that applied to Mannella's federal claims, the state claims could not survive summary judgment. Notably, Mannella does not dispute the Court's substantive conclusion.

28 U.S.C. § 1367(c) gives the district court the discretion to exercise supplemental

jurisdiction over state law claims. While the dismissal of all federal claims before trial might warrant the relinquishment of jurisdiction over state claims, the Supreme Court has explained that this action is not mandatory but rather a matter of discretion. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). A court should balance a number of factors, including judicial economy, convenience, fairness, and comity, when exercising such discretion. *Id.* In the case at bar, Mannella does not explain her state constitutional theories or submit any evidence that they are substantive, let alone "unsettled." We therefore do not believe that a vague reference to "comity" will call into question the District Court's discretion to maintain jurisdiction and dismiss with prejudice Mannella's state constitutional law claims along with her other claims in the interest of judicial economy, convenience, and fairness.

The judgment of the District Court will be affirmed.

_____

TO THE CLERK:

Please file the foregoing Opinion.

BY THE COURT:

/s/ Edward R. Becker
Circuit Judge