**NORTHLAND INSURANCE COMPANY, on behalf of itself and all others similarly situated, Plaintiff,**

v.

**SHELL OIL COMPANY, et al., Defendants.**

**Civil No. 95–5781.**

United States District Court, D. New Jersey.

July 12, 1996.

Philip Stephen Fuoco, Haddonfield, NJ, and Stewart C. Crawford, Law Office of Stewart C. Crawford & Associates, Media, PA, for Plaintiff, Northland Insurance Co.

Robert John Kelly, Wilson, Elser, Moskowitz & Dicker, Newark, NJ, and Daniel Hyde, Vinson & Elkins, L.L.P., Houston, TX, for Defendant, Shell Oil Company.

David G. White, Drew D. Krause, Matthews White Giacumbo & Fischer, Morristown, NJ, and Harold G. Levison, Paul M. O'Connor III, and James J. Stricker, Kasowitz, Benson, Torres & Friedman L.L.P., New York City, for Defendant, Hoechst Celanese Corporation.

Brian Philip Sullivan, Smith, Stratton, Wise, Heher & Brennan, Princeton, NJ, and James Sanderlin, and Kathleen Taylor Sooy, McGuire, Woods, Battle & Boothe, Richmond, VA, for Defendant E.I. duPont de Nemours and Co.

## OPINION

ROSEN, United States Magistrate Judge:

### INTRODUCTION

Presently before the court is the motion of Philip Stephen Fuoco, Esquire, counsel for the plaintiff, to vacate the RICO case management order pursuant to Fed.R.Civ.P. 8. The defendants have opposed the motion. After careful consideration of the parties' submissions and the oral argument conducted on the record on July 8, 1996, and for the reasons noted herein, the motion shall be *denied.*

### BACKGROUND

On November 2, 1995, Northland Insurance Company and Prudential Property and Casualty Insurance Company filed a putative class action on behalf of insurers who assert subrogation rights against the defendants, E.I. duPont de Nemours and Company (hereinafter "DuPont"), Shell Oil Company (hereinafter "Shell") and Hoechst–Celanese Corporation (hereinafter "Celanese") as a result of the defendants' allegedly defective polybutylene plumbing systems. (Complaint ¶ 1). On December 15, 1995, prior to the filing of an answer by any defendant, the plaintiff filed the First Amended Complaint, dropping Prudential as a plaintiff and making several changes to the body of the complaint. The plaintiff asserts, in an amended complaint painted with extraordinarily broad strokes, a right to legal, declaratory and injunctive relief, claiming that its subrogation rights from claims paid by class member insurance companies to policyholders who have suffered damages to their property as a result of leaks in polybutylene plumbing systems were usurped by the settlements of policyholders with the defendants. According to DuPont, the defendants supplied raw material plastic resins to other companies that manufactured the component parts of these plumbing systems. (Memorandum of Defendant DuPont in Opposition at 2) (hereinafter "DuPont Br.").

The plaintiff labels the counts as follows: Count I, Intentional Interference with Performance of Contract (Restatement of Contracts); Count II, Intentional Interference with Contract (Common Law); Count III, Unlawful Interference with Prospective Economic Advantage; Count IV, Direct Cause of Action for Damages Sustained as a Result of Failure of Polybutylene Plumbing Systems; Count V, 18 U.S.C. § 1962(c); Count VI, Conspiracy, 18 U.S.C. § 1962(d); and Count VII, Supplemental Party Jurisdiction.

Substantively, the complaint makes only generalized and vague allegations against the defendants. For example, in Count IV, "Direct Cause of Action for Damages Sustained as a Result of Failure of Polybutylene Plumbing Systems," the plaintiff asserts that the defendant companies "committed consumer fraud, advertising fraud, and violations of numerous state and federal consumer protection statutes in the course of manufacturing, promotion, marketing and sale of the

Polybutylene plumbing systems." (Complaint ¶ 67d). However, the plaintiff does not state the specific bases for these general assertions of fraud. Nor does the plaintiff identify the particular statutes violated. Further illustrative of the complaint's ambiguity, Count V, the RICO count, does not describe with specificity the factual bases to support the elements for a RICO fraud claim. Rather, after a series of general and conclusory statements regarding the defendants' activities, the plaintiff refers the defendants and this court to the RICO statute itself for a description of the allegedly violative activity, stating:

> 75. Plaintiffs and the class were directly injured in their business and property by defendants' participation in this pattern of unlawful activity, *as more fully described in 18 U.S.C. §§ 1961(1), (5).*

(Complaint ¶ 75) (emphasis added). The plaintiff concludes on this basis that the defendants are liable, "in an amount not presently ascertainable." (Complaint ¶ 76). Additionally, in Count V, the complaint implicates a non-party, the Plumbing Claims Group, in the allegedly unlawful acts of the defendants, while acknowledging that "[t]he PCG is a separate entity, distinct from all defendants, which could exist separately from the pattern of unlawful activity alleged herein." (Complaint ¶ 71).

On February 22, 1996, following a status and case management conference during which the parties both recognized the certain complexity of the case, this court exercised its discretion under Rule 15B.6, General Rule for the District of New Jersey (hereinafter "Local Rule"), to order preparation of a RICO Case Statement. The plaintiff, without requesting permission from this court, filed its statement under seal. Subsequently, this court advised the plaintiff that a motion would be required to prohibit disclosure of the statement. The present motion followed.

The plaintiff has advanced several arguments in support of vacating the order: (i) that the complaint, as amended, is pled with sufficient specificity for the purposes of Fed. R.Civ.P. 8, thus the RICO Case Statement is unnecessary; (ii) that the information contained within is for the benefit of the court alone, and thus there is "no reason why a RICO statement cannot be filed *in camera* and under seal"; (iii) that the RICO Case Statement resembles contention interrogatories, which the Federal Rules do not permit at the initial stages of discovery; (iv) that Fed.R.Civ.P. 12(e) does not provide authority for the RICO Case Statement; and (v) that the notice requirements for federal pleading prohibit the RICO Case Statement. Essentially, the plaintiff argues that the court has no authority to require the entry of the RICO Case Statement. In support of the plaintiff's assertions, Northland analogizes the Statement to either a heightened pleading requirement, violative of Supreme Court jurisprudence under *Leatherman v. Tarrant County Narcotics Intelligence Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), or a court prepared discovery request, violative of Third Circuit jurisprudence under *Sempier v. Johnson & Higgins,* 45 F.3d 724, *cert. denied* —— U.S. ——, 115 S.Ct. 2611, 132 L.Ed.2d 854 (1995).

Conversely, the defendants assert that the Federal Rules, Local Rules and Acts of Congress are replete with authority to support the RICO Case Statement practice. The defendants rely upon the Judicial Improvements Act, 28 U.S.C. § 2071, et seq., Federal Rules 83, 12(e), 9(b) and 16, and Local Rules 1A and 15.

## DISCUSSION

The rule-making authority of local federal courts is primarily located in the Judicial Improvements Act, 28 U.S.C. § 2071, *et seq.,* and Federal Rule of Civil Procedure 83. Section 2071 provides that:

> The Supreme Court *and all courts established by Act of Congress* may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072 [1] of this title.

28 U.S.C. § 2071(a) (emphasis added). The section further requires that public notice and an opportunity for comment accompany

---

**1.** Section 2072 prescribes the rule-making authority of the Supreme Court.

any rule promulgated by any court other than the Supreme Court.[2] Federal Rule of Civil Procedure 83 incorporates the dictates of Section 2071, providing in relevant part that:

> Each district court, acting by a majority of its judges, may, after giving appropriate public notice and an opportunity for comment, make and amend rules governing its practice. A local rule shall be consistent with—but not duplicative of—Acts of Congress and rules adopted under 28 U.S.C. §§ 2072 and 2075[.]

Fed.R.Civ.P. 83(a); *See Baylson v. Disciplinary Bd. of Supreme Court of Pennsylvania,* 764 F.Supp. 328, 330 (E.D.Pa.1991), *aff'd.* 975 F.2d 102 (3d Cir.1992), *cert. denied* 507 U.S. 984, 113 S.Ct. 1578, 123 L.Ed.2d 147 (1993). The General Rules for the District of New Jersey acknowledge the requirements of the Judicial Improvement Act and the Federal Rules, providing:

> The following General and Admiralty Rules supplement the Federal Rules of Civil Procedure, ... and are applicable in all proceedings when not inconsistent therewith. They shall be considered as rules for the government of the Court and conduct of causes, and shall be construed consistent with the Civil Justice [Reform] Act of 1990 to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay. Unless otherwise stated, any rule may be relaxed or dispensed with by the Court if adherence would result in surprise or injustice. In the absence of Rule the Court may proceed in any manner compatible with these purposes.

Local Rule 1A.

The Civil Justice Reform Act of 1990, 28 U.S.C. § 471, *et seq.,* (hereinafter "CJRA") referenced in Local Rule 1A provides further guidance for district court rule promulgation and practice. The CJRA mandates the following:

---

**2.** Subsection (b) provides that:

Any rule prescribed by a court, other than the Supreme Court, under subsection (a) shall be prescribed only after giving appropriate public notice and an opportunity for comment. Such

---

There shall be implemented by each United States district court in accordance with this chapter, a civil justice expense and delay reduction plan.... The purposes of each plan are to facilitate deliberate adjudication of civil cases on the merits, monitor discovery, improve litigation management, and ensure just, speedy, and inexpensive resolutions of civil disputes. 28 U.S.C. § 471. Congress contemplated that courts—particularly local courts—would utilize the CJRA as a basis for promulgating procedures for management of complex cases. With respect to the CJRA, Congress made the following findings:

(1) The problems of cost and delay in civil litigation in any United States district court must be addressed in the context of the full range of demands made on the district court's resources by both civil and criminal matters.

(2) The court, the litigants, the litigants' attorneys, and the Congress and the executive branch, share responsibility for cost and delay in civil litigation and its impact on access to the courts, adjudication of cases on the merits, and the ability of the civil justice system to provide proper and timely judicial relief for aggrieved parties.

(3) The solutions to problems of cost and delay must include significant contributions by the courts, the litigants, and the litigants' attorneys, and by the Congress and the executive branch.

(4) In identifying, developing, and implementing solutions to problems of cost and delay in civil litigation, it is necessary to achieve a method of consultation so that individual judicial officers, litigants, and litigants' attorneys who have developed techniques for litigation management and cost and delay reduction can effectively and promptly communicate those techniques to all participants in the civil justice system.

(5) Evidence suggests that an effective litigation management and cost and delay

---

rule shall take effect upon the date specified by the prescribing court and shall have such effect on pending proceedings as the prescribing court may order.

28 U.S.C. § 2071(b).

reduction program should incorporate several interrelated principles, including—

    (A) the differential treatment of cases that provides for individualized and specific management according to their needs, complexity, duration, and probable litigation careers;

    (B) early involvement of a judicial officer in planning the progress of a case, controlling the discovery process, and scheduling hearings, trials, and other litigation events;

    (C) regular communication between a judicial officer and attorneys during the pretrial process; and

    (D) utilization of alternative dispute resolution programs in appropriate cases.

(6) Because the increasing volume and complexity of civil and criminal cases imposes increasingly heavy workload burdens on judicial officers, clerks of court, and other court personnel, it is necessary to create an effective administrative structure to ensure ongoing consultation and communication regarding effective litigation management and cost and delay reduction principles and techniques.

28 U.S.C. § 471, Comments citing Congressional Statement of Findings, Section 102 of Pub.L. 101–650. Clearly, Congress intended that courts attempt to implement the "differential treatment of cases that provides for individualized and specific management according to their needs, complexity, duration, and probable litigation careers" and utilize "early involvement" of judicial officers to effectuate the differential procedures.[3]

In accordance with the mandates of the CJRA the Judicial Improvement Act and the Federal Rules, the District of New Jersey continuously scrutinizes its existing rules, refining and modifying them when deemed appropriate. *See* Lite, *New Jersey Federal Practice Rules,* Local Rule 1A, Comment 1. By amendment in 1991, the District of New Jersey formally adopted the RICO Case Order as it appears in Appendix O to Local Rule 15B. The order was designed to aid plaintiffs in framing their claims with particularity sufficient for the requirements of the RICO statute, 18 U.S.C. §§ 1961–1968. *Id.,* Local Rule 15B.6 Comment 6. Significantly, the order of a RICO Case Statement under Local Rule 15B.6 is discretionary, not mandatory.[4]

Although approximately one dozen districts have adopted and routinely employ RICO Case Statements similar to that of the District of New Jersey, the plaintiff supplies no case which has held the RICO Case Order improper.[5] Moreover, the Third Circuit and the United States Supreme Court have relied upon the RICO Case Statements filed by parties in various cases for a full statement of the plaintiff's claim. *See, e.g., National Organization of Women, Inc. v. Scheidler,* 510 U.S. 249, 114 S.Ct. 798, 800, 127 L.Ed.2d 99 (1994) (noting without pejorative comment that the plaintiffs "later amended their complaint, and pursuant to local rules, filed a 'RICO Case Statement' that further detailed the enterprise, the pattern of racketeering, the victims of the racketeering activity, and the participants involved"); *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.,* 46 F.3d 258, 264 (3d Cir.1995) (relying upon the

**3.** The Congressional Findings in particular negate the plaintiff's argument that the RICO Case Statement resembles contention interrogatories at the beginning of discovery. Congress has specifically directed courts to become involved early in the litigation process.

**4.** Local Rule 15B.6 provides that "[i]n a civil action arising under 18 U.S.C. Sections 1961–1968, the Judge or Magistrate *may* require a RICO case statement to be filed and served in the form set forth in Appendix O." Local Rule 15B.6 (as amended 1991) (emphasis supplied).

**5.** After an initial survey of the United States District Courts throughout the country, I have

located RICO Case Orders in the following jurisdictions:

    Southern District of California, Local Rule 11.1; District of Connecticut, Local Rule Appendix 26(f); Southern District of Georgia, Local Rules 3.1, 3.3, and 9; Southern District of Illinois; Northern District of Illinois; District of Kansas, Local Rule 38.1; District of Maryland, Civil Rule 103; Northern District of New York, Local Rule 9.2; Western District of New York, Civil Rule 5.1, Appendix I; Western District of Pennsylvania, Local Rule 16.1; District of Rhode Island, Cost and Delay Reduction Plan; Eastern District of Washington, Local Rule 8.

RICO Case Statement for a statement of the claim in an appeal of an order for summary judgment); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1188 (3d Cir.1993) (again utilizing the RICO Case Statement for a complete statement of the plaintiff's claim).

Certain of the Federal Rules have been recognized as more specific authority for the RICO Case Statement. One example is Federal Rule 12(e), which authorizes federal courts to order plaintiffs to provide more definite statements of their claims. Courts have upheld the case statement tool in RICO cases in response to allegations of vagueness. *See Old Time Enterprises, Inc. v. International Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir.1989); *see also* the Report of the Federal Procedures Committee of the New York State Bar Association, published as *RICO Case Statements*, RICO Bus. Disputes Guide (CCH) (citing further cases). However, the federal rule providing the strongest authority for the RICO Case Statement is Rule 16.

This court has recently re-affirmed its commitment to ardent enforcement of Rule 16 and its emphasis on case management. *See Chiropractic Alliance of New Jersey v. Parisi*, 164 F.R.D. 618 (D.N.J.1996) (Brotman) (recognizing that observance of deadlines set in Magistrate Judges' scheduling orders avoids injustice and delay). Subsection (c)(12) provides that:

> [a]t any conference under this rule consideration may be given, and the court may take appropriate action, with respect to ... (12) the need for adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems[.]

Fed.R.Civ.P. 16(c)(12) (as amended 1993). In its comments to the 1993 amendments, the Advisory Committee remarked that the primary purpose of the changes in subdivision (c) are to call attention to the opportunities for structuring of trial under Rules 42, 50, and 52 *and to eliminate questions that have occasionally been raised regarding the authority of the court to make appropriate order designed either to facilitate settlement or to provide for an efficient and economical trial.* **The prefatory language of this subdivision is revised to clarify the court's power to enter appropriate orders at a conference notwithstanding the objection of a party.** *Id.,* Advisory Committee Note, 1993 Amendment (emphasis added). As the summary review of the case, *supra*, indicates, the procedural history and primary issues promise to be involved, costly and complicated. Further, the parties do not dispute that RICO claims generally involve complex issues.

In contradistinction to all the above referenced authority, the plaintiff offers *Leatherman v. Tarrant County Narcotics Intelligence Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), and *Sempier v. Johnson & Higgins,* 45 F.3d 724 (3d Cir.1995), *cert. denied* —— U.S. ——, 115 S.Ct. 2611, 132 L.Ed.2d 854 (1995).

In *Leatherman,* the Court found the "heightened pleading standard" applied to civil rights cases brought under 28 U.S.C. § 1983 violative of the "notice pleading" adopted by the Federal Rules.[6] 507 U.S. at 168, 113 S.Ct. at 1163. The plaintiff urges this court to apply the reasoning of *Leatherman* to the instant case, arguing that Rule 8(a)'s notice pleading prohibits practices such as the RICO Case Statement. However, *Leatherman* does not apply to RICO cases for two primary reasons. First, RICO cases often involve allegations of fraud, which, under the federal rules, require pleading with specificity pursuant to Federal Rule 9(b).[7] While not all RICO claims contain allegations

---

**6.** Federal Rule of Civil Procedure 8 states in relevant part:

> A pleading which sets forth a claim for relief ... shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, ... [and] (2) a short and plain statement of the claim showing that the pleader is entitled to relief[.]

Fed.R.Civ.P. 8(a).

**7.** Federal Rule of Civil Procedure 9(b) provides that:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

of fraud, the plaintiff's amended complaint clearly asserts fraud as a basis for certain claims. *See* Amended Complaint ¶¶ 23, 24, 26, 70–76, 78–83. Finally, it is significant that the Supreme Court relied upon the RICO Case Statement for a complete statement of the claim in the *NOW v. Scheidler, supra,* in 1994, a full year after the *Leatherman* decision.

Second, *Leatherman* did not consider a local court's interpretation of a local rule or a local order. Rather, the Court addressed a Fifth Circuit practice of requiring heightened pleading in Section 1983 cases notwithstanding the basis of the claim or its relative complexity. *Id.* at 166–168, 113 S.Ct. at 1162. As noted above, none of the parties suggest that RICO cases are commensurate to section 1983 cases as regards complexity or vastness. Moreover, the RICO Case Statement does not constitute a heightened pleading standard. Although the Statement is considered "equivalent to a supplemental pleading" (Local Rule 15, Appendix O), the statement is not required in every case. Rather, a judicial officer may order the statement's entry in appropriate cases. Local Rule 15.B.6. Thus, the statement serves as a case management tool. As the New York Federal Rules Committee noted:

> The mission of the case statement is to amplify the allegations of the complaint. It provides clarity and precision in the statement of a civil RICO claim and thereby assists in the identification, clarification and narrowing of issues—both factual and legal. The case statement may help in the early screening of ill conceived RICO claims, focus discovery, assist in the determination of summary judgment motions and provide a blueprint for trial.

Report of the Federal Procedures Committee of the New York State Bar Association, published as *RICO Case Statements,* RICO Bus. Disputes Guide (CCH) ¶ 7453. Consequently, this court declines to extend the reasoning in *Leatherman* to civil RICO Case Statements.

█ Further, in this particular case, the RICO order was advisable as the only federal claim within the suit is the RICO claim. Federal courts are under a continuing obli-

gation to assure that subject matter jurisdiction has been appropriately asserted. Federal Rule of Civil Procedure 12(h)(3) provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." This rule places the burden on the court—as well as on the parties—to assure a continuing presence of subject matter jurisdiction in every action before this court. Although the plaintiff also has asserted jurisdiction on the grounds of diversity of citizenship, the amount in controversy element of diversity will become a critical factor in review of the class certification issue. Any parties who cannot individually meet the amount in controversy requirement may wish to rely upon federal question jurisdiction. This enhances the court's need to review federal question subject matter jurisdiction early on in this complex and potentially costly litigation. The RICO Case Order can provide a useful tool for such a review.

In the alternative, the plaintiff argues that the requirement of a RICO Case Statement is equivalent to a court's substitution of a "Bill of Particulars" for a party's own interrogatories. The Third Circuit found in *Sempier* that such a substitution constituted abuse of discretion. 45 F.3d at 736. However, the RICO Case Statement differs greatly from a "Bill of Particulars" in federal civil practice. First, as the Third Circuit notes, the "Bill of Particulars" was essentially eliminated as a federal discovery tool with the adoption of the Federal Rules of Civil Procedure in 1948. *Sempier,* 45 F.3d at 735. Whereas, the RICO Case Statement is a relatively new tool utilized by district courts. Second, *Sempier* involved a *discovery tool,* equivalent to an interrogatory. The RICO Case Statement more accurately would be described as a *case management tool.* Third, the RICO Case Statement does not *displace* traditional discovery requests by the parties. The Third Circuit found displacement the truly unpalatable practice. *See id.* at 735–736 (emphasizing that re-writing a party's discovery requests was the unacceptable behavior practiced by the court). Finally, the Third Circuit emphasized that the

district court employed the procedure of displacing the party's interrogatories with the court's own Bill of Particulars in the absence of express authority. *Id.* No statute, federal rule or local rule provided for the procedure. Conversely, as was discussed *supra,* the RICO Case Order is supported by Congressional act, federal and local rule. Thus, *Sempier*'s comments with respect to the Bill of Particulars do not apply to the RICO Case Statement.[8]

## CONCLUSION

The plaintiff has failed to show how the various rules and statutes cited above do not provide authority for the requirement of a RICO Case Statement. Moreover, the RICO Case Statement cannot be analogized to either a 28 U.S.C. § 1983 civil rights heightened pleading requirement or a substitution of the court's discovery for the party's discovery with a Bill of Particulars. Consequently, the plaintiff's motion shall be *denied.* The RICO Case Statement shall be filed with the Clerk of the Court and served upon all counsel within ten days.

An appropriate order shall enter.

## ORDER

This matter having been brought before this court upon the motion of Philip Stephen Fuoco, Esquire, counsel for the plaintiff, to vacate the RICO case management order pursuant to Fed.R.Civ.P. 8; and the court having considered the submissions of the parties; and the court having further considered the oral argument conducted on the record on July 8, 1996; and for the reasons noted in the letter opinion entered this date; and for good cause shown;

IT IS this 11th day of July, 1996 hereby

**ORDERED** that the plaintiff's motion to vacate the RICO case management order, pursuant to Fed.R.Civ.P. 9(b), 83, 12(e), Local Rule 1A, 15B.6, the Judicial Improvements Act, 28 U.S.C. § 2071, et seq., and the

Civil Justice Reform Act, shall be **DENIED;** and

IT IS FURTHER **ORDERED** that by the 19th day of July, the plaintiff shall file with the court and serve upon the defendants its RICO Case Statement.

---

8. Finally, the plaintiff's vague assertions of work product protection and attorney client privilege are unpersuasive. First, the order does not require a party to reveal protected information. Second, the plaintiff does not point to any particular provision of the RICO Case Statement with a specific complaint. As the plaintiff is aware, claims of privilege must be made with specificity in accordance with Rule 26(c). The plaintiff does not attempt to meet the standard required for the entry of a protective order under 26(c). (*See* P's Br. at 4).