

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-18-1996

# Hampton v. Borough of Tinton Falls Pol. Dept.

Precedential or Non-Precedential:

Docket 95-5762

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Hampton v. Borough of Tinton Falls Pol. Dept." (1996). *1996 Decisions.* Paper 56.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/56

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 95-5762



PRESTON HAMPTON; CARL BOWLES
                    Appellants
              v.

   BOROUGH OF TINTON FALLS POLICE DEPARTMENT; ANN Y. McNAMARA,
MAYOR, INDIVIDUALLY AND ACTING UNDER COLOR OF STATE LAW; RICHARD
BRANDSTETTER, COUNCILMAN, INDIVIDUALLY AND ACTING UNDER COLOR OF
STATE LAW; ROBERT GAGLIANO, COUNCILMAN, INDIVIDUALLY AND ACTING
UNDER COLOR OF STATE LAW; RICHARD MAHER, COUNCILMAN, INDIVIDUALLY
AND ACTING UNDER COLOR OF STATE LAW; LYNN ROBINSON, COUNCILWOMAN,
INDIVIDUALLY AND ACTING UNDER COLOR OF STATE LAW; GABE TORNILLO,
COUNCILMAN, INDIVIDUALLY AND ACTING UNDER COLOR OF STATE LAW, AND
IN HIS CAPACITY AS A MEMBER OF THE PROMOTIONAL REVIEW BOARD;
ANTHONY MUSCILLO, INDIVIDUALLY AND ACTING UNDER COLOR OF STATE
LAW IN HIS CAPACITY AS BOROUGH ADMINISTRATOR, PUBLIC SAFETY
DIRECTOR AND MEMBER OF THE PROMOTIONAL REVIEW BOARD AND ORAL
INTERVIEW BOARD; LADEAN WHITE, INDIVIDUALLY AND ACTING UNDER
COLOR OF STATE LAW, AND IN HIS CAPACITY AS CAPTAIN OF POLICE AND
MEMBER OF THE PROMOTIONAL REVIEW BOARD; PASQUALE MENNA,
INDIVIDUALLY AND ACTING UNDER COLOR OF STATE LAW IN HIS CAPACITY
AS BOROUGH PROSECUTOR AND MEMBER OF THE PROMOTIONAL REVIEW BOARD;
LOU NAPOLITANO, INDIVIDUALLY AND ACTING UNDER COLOR OF STATE LAW
IN HIS CAPACITY AS MEMBER OF THE ORAL REVIEW BOARD; JOSEPH
TORCHIA, INDIVIDUALLY AND ACTING UNDER COLOR OF STATE LAW AS A
MEMBER OF THE ORAL REVIEW BOARD; JOHN DOES, (1-100); JANE DOES,
(1-100); DAVID GONZALEZ



            APPEAL FROM THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
                      (D.C. No. 95-cv-01828)



                    Argued: August 6, 1996

        Before:  NYGAARD, LEWIS and McKEE, Circuit Judges

                  (Filed  October 18, 1996)

GREGORY S. SCHAER, ESQUIRE
LINDA B. KENNEY, ESQUIRE (ARGUED)
Law Offices of Linda B. Kenney
The Galleria, Two Bridge Avenue
Building No. 5, Second Floor
Red Bank, New Jersey  07701

        Attorneys for Appellants

ROBERT T. CLARKE, ESQUIRE (ARGUED)
SHARON P. MARGELLO, ESQUIRE
Apruzzese, McDermott, Mastro & Murphy, P.C.
25 Independence Blvd.
Post Office Box 112
Liberty Corner, New Jersey  07938

        Attorney for Appellees


                    OPINION OF THE COURT


McKEE, Circuit Judge.
        Preston Hampton and Carl Bowles appeal from the district
court's grant of summary judgment in favor of all defendants on
all claims that plaintiffs brought against the Borough of Tinton
Falls New Jersey, the Tinton Falls Police Department and numerous
governing officials of that borough.  Hampton, who is Black, is a
Detective Sergeant with the Tinton Falls Police Department;
Bowles, who is also Black, is a former Borough employee and a
named plaintiff by virtue of his status as a resident in the
borough.  Plaintiffs allege illegal discrimination in connection
with the borough's decision not to promote Hampton from sergeant
to lieutenant.  We hold that the district court properly granted
summary judgment on plaintiff's "disparate-impact" claim, but
that the district court erred in granting summary judgment on
plaintiffs' other claims.  Accordingly, we will affirm in part,
and reverse in part, and remand the case for further proceedings.

                              I.

        In October of 1994, the Tinton Falls Police Department
announced two openings for promotion to the rank of lieutenant.
Hampton was one of four candidates to apply for the positions,
and was the only Black candidate.  The three other candidates
were Sergeant Peterson and Sergeant Turning, both of whom are
White, and Sergeant Gonzalez, who is Latino.  In order to be
promoted, a candidate had to first pass a multiple choice exam,
then compete before a Promotional Review Board ("PRB"), and an
Oral Review Board ("ORB").  Although the actual score of the
"objective" multiple choice exam was not factored into the
process, an applicant could not be promoted without receiving a
passing grade on that exam.  The Review Board evaluations were

subjective.

The multiple choice exam was administered in January of 1995 by Iowa Testing Service. All four of the candidates passed the test and were then reviewed by the PRB and ORB. Initially, the PRB was comprised of Borough Administrator and Public Safety Director Anthony Muscillo, Major Melvin McKeller, Borough Prosecutor Pat Menna and Borough Council member Gabe Tornillo. McKeller, who is Black, subsequently announced his retirement and declined to serve on the Promotional Review Board, and Captain (now Major) LaDean White was appointed to replace McKeller. App. at 703-04. Captain White was the immediate supervisor for candidates Turning, Gonzalez and Peterson. Sergeant Hampton was part of the Detectives Bureau and reported to Captain Robert Jantausch. After White replaced McKellar, neither the PRB nor the ORB had any minority members. App. at 704.

The PRB met in February of 1995 to review the candidates. The Board evaluated the applicants' records and performance using ten factors, each of which was worth ten percent of a candidate's evaluation. The categories for evaluation included:

(1) leadership ability
(2) communication skills
(3) decision making ability
(4) working with others
(5) personal commitment
(6) problem analysis
(7) adherence to rules
(8) education and self-improvement
(9) length and merit of service
(10) overall fitness for the position

Each Board member had access to the candidate's resume, performance evaluations for the three prior evaluation periods, and the candidate's personnel file. The Board members reviewed those records and also discussed their impressions of the candidates based upon personal experiences. The PRB gave Turning a score of 93.875, Gonzalez a score of 90.5, Peterson a score of 77.875, and Hampton a score of 77.625.

The candidates also met with the ORB which consisted of Anthony Muscillo, Joseph Torchia and Louis Napolitano. Muscillo, as stated above, is the Borough Administrator. Torchia and Napolitano are both Public Safety Directors from neighboring municipalities. The ORB evaluated each of the candidates' responses to the same series of questions involving everyday police activities. The candidates were judged on their decision-making ability, analytical ability, communication skills, judgment and creativity. Turning received the highest score from each of the Board members, and the highest average score of 94.83. Gonzalez received the second highest score from each of the Board members and had the second highest overall score of 87.93. Peterson had an average score of 82.16 and Hampton had an average score of 76.10.

The scores from the PRB and the ORB were then averaged with each score weighted equally. Turning and Gonzalez were promoted to the rank of lieutenant, and Hampton filed a complaint with the EEOC claiming that he was not promoted because of his race. The

complaint was filed at the EEOC office in Newark on April 12, 1995, but it was erroneously dated April 13, 1995. This error caused problems because when the Borough's Personnel Administrator (Helen Auringer) saw the incorrect EEOC filing date, she noted that Hampton had been on duty all day on April 13, 1995, and should not have been in Newark visiting the EEOC. As a result, an internal investigation was initiated and on May 2, 1995, Hampton was notified that he was under disciplinary investigation for "[g]oing to Newark on duty time to file a complaint with [the] EEOC" and "[u]sing a department vehicle to travel to Newark for personal business without authorization." App. at 281. The Borough maintains that it soon discovered the typographical error and ended the investigation without any adverse consequences to Hampton. However, it is alleged that on August 28, 1995, without any explanation, Major White told Hampton that he (Hampton) was being removed from the detective bureau and reassigned to road patrol. Brief for Appellants at 12. Hampton claims that he continues on road patrol even though White told him that the reassignment would be temporary. Id.

## II .

Hampton asserts several theories of recovery. Counts One to Five allege that defendants' actions in not promoting him violated Title VII of the Civil Rights Act of 1964, the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, and 42 U.S.C. §§ 1981 and 1983. Count Six is an "Action in Lieu of Prerogative Writ" alleging that defendants were arbitrary, capricious and unreasonable in violation of N.J.S.A. § 40A:14-129. Count Seven alleges a breach of contract claim based upon the Police Department's alleged failure to comply with the Borough's affirmative action policy that we need not discuss. Counts Eight to Ten allege that Hampton's reassignment was in retaliation for his EEOC complaint in violation of Title VII of the Civil Rights Act of 1964, the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, and Hampton's free speech rights pursuant to 42 U.S.C. § 1983.

Defendants moved for summary judgment as to the entire complaint, arguing that plaintiffs failed to set forth a genuine issue of material fact that would establish racial discrimination or allow an inference of racial animus. In response, plaintiffs argued that racial pretext or direct discrimination was apparent from the evidence and that therefore, summary judgment in favor of the defendants would be inappropriate. Additionally, plaintiffs filed a cross-motion for summary judgment as to Count Six of their complaint, arguing that the defendants violated N.J.S.A. § 40A:14-129 by failing to give due consideration to the length and merit of service criterion in the promotion process.

The district court granted summary judgment for the defendants as to all counts of plaintiffs' complaint, and this appeal followed.

## III.

The district court's grant of summary judgment is a final order that disposed of all claims, and this court therefore has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Our review of the district court's summary judgment order is plenary,

and we apply the same test as the district court. Sempier v. Johnson & Higgins, 45 F.3d 724, 727 (1995); Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir.) (in banc), cert. dismissed, 483 U.S. 1052 (1987). Summary judgment is appropriate when the moving party is entitled to judgment as a matter of law and there is no genuine dispute of material fact. Gottshall v. Consolidated Rail Corp., 56 F.3d 530, 533 (3d Cir. 1995) (citing Fed. R. Civ. P. 56(c)). In order to defeat "a properly supported summary judgment motion, the party opposing it must present sufficient evidence for a reasonable jury to find in its favor." Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-52 (1986)). In essence, the non-moving party must demonstrate a dispute over facts that might affect the outcome of the suit. Id. Moreover, in reviewing the record, we must give the non-moving party the benefit of all reasonable inferences. Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993).

IV.

Plaintiffs' discrimination claims are based upon both disparate treatment and disparate impact theories of discrimination.

> "`Disparate treatment' . . . is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion [or other protected characteristics.] Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. . . .
>
> "[C]laims that stress `disparate impact' [by contrast] involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. Proof of discriminatory motive . . . is not required under a disparate treatment theory." Teamsters v. United States, 431 U.S. 324, 355 n.15 (1977) (citation omitted).

Hazen Paper Co. v. Biggins, U.S. , 113 S. Ct. 1701, 1705-06, 123 L. Ed. 2d 338, 346 (1993). The district court adequately explained why plaintiffs' disparate impact theory could not survive defendant's motion for summary judgment, and we affirm that part of the district court's decision for the reasons set forth by the district court. See Dist. Ct. Op., App. at 15-17.

A.

Disparate Treatment Claim

Plaintiffs' disparate treatment claim is based upon "pretext." Brief for Appellants at 14-15. As this court

explained in Waldron v. SL Industries, Inc., 56 F.3d 491 (3d Cir. 1995), the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and more recently refined in St. Mary's Honor Center v. Hicks,    U.S.   , 113 S. Ct. 2742 125 L. Ed. 2d 407 (1993), is the appropriate analysis for summary judgment motions in cases alleging violations of Title VII, 42 U.S.C. § 1981, and the New Jersey Law Against Discrimination.  Waldron, 56 F.3d at 494, 504.

> Under the familiar shifting burdens analysis of McDonnell Douglas, a plaintiff must initially establish a minimal prima facie case -- essentially, that he or she is a member of a protected class and was qualified for an employment position, but that he or she was either not hired for that position or was fired from it "under circumstances that give rise to an inference of unlawful discrimination."  Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Once the plaintiff establishes his or her prima facie case, the burden shifts to the defendant to articulate one or more legitimate, non-discriminatory reasons for its employment decision.  If one or more such reasons are proffered, the presumption of discrimination created by establishment of the prima facie case is dispelled, and the plaintiff must prove that the employer's proffered reason or reasons were pretextual -- that is, that they are false and that the real reason for the employment decision was discriminatory.

Id. at 494 (footnote omitted).  However, we also noted that:

> [b]ecause the factfinder may infer from the combination of the plaintiff's prima facie case and its own rejection of the employer's proffered non-discriminatory reasons that the employer unlawfully discriminated against the plaintiff and was merely trying to conceal its illegal act with articulated reasons, seeHicks,    U.S. at

the 113 S. Ct. at 2749, a

> plaintiff who has made out a prima facie case may defeat a motion for summary judgment by either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.

Id. at 495 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

Here, the district court and the defendants assumed that a prima facie case had been established for purposes of ruling upon

the defendants' summary judgment motion.  App. at 19.  Thus, the burden shifted to the defendants to proffer a legitimate, non-discriminatory reason for failing to promote Hampton.  Defendants met that burden by attempting to demonstrate that each of the candidates was evaluated by the same criteria, and that Turning and Gonzalez were promoted because they had received the highest score in the PRB and ORB evaluations, and were therefore the most qualified.  Id. at 19-20.  The district court accepted defendants' explanations, and further concluded that Hampton did not satisfy his burden of either demonstrating that defendants' proffered reasons were pretextual or presenting other evidence from which a factfinder could reasonably conclude that discrimination factored into the decision to promote Turning and Gonzalez instead of him.  Id. at 12.  We disagree.

The district court either ignored several discrepancies in the evaluation process, or failed to give all reasonable inferences arising there from the plaintiffs as it was required to do in ruling upon a motion for summary judgment.  These discrepancies and inferences could support (though they certainly do not compel) a jury finding that race was a motivating factor in the decision not to promote Hampton.  When Hampton's performance evaluations were considered by the PRB, less (if any) consideration was given to the recommendation that Major McKeller gave him.  Yet, McKeller was Hampton's supervisor at the time of the promotion review.  Major White explained the decision to minimize the importance of McKellar's evaluation as follows:

> A:   It may have been discussed. I don't know if it was considered only because of the evaluator.
>
> Q:   And "only because of the evaluator," what do you mean by that?
>
> A:   Mel McKeller evaluated him at that time.
>
> Q:   Why would that be a concern?
>
> A:   Because he was in charge of the detective bureau at that time and presently was at that time of the promotional procedure the commanding officer of the department and he's also black.
>
> Q:   Why would him being black have any type of effect on whether you would consider this particular performance evaluation?
>
> AA:  If there was any doubt of whether or not the evaluations previous were being considered to be inaccurate.  It shows continuity.

App. at 245 (emphasis).

Major White further explained that McKeller's evaluations

may not have been considered because the evaluators knew that McKeller was "pushing Preston Hampton for a promotion at that time." App. at 245. Defendants argue that the evaluators reasonably assumed that McKeller's evaluation was improper because McKeller wanted Hampton to be promoted. In reviewing this testimony the district court explained:

> Hampton had been evaluated by Jantausch, who was not on the committee. Consideration of McKeller's evaluation, therefore, allowed the board to determine whether Jantaush's evaluations of Hampton, which were average, were consistent with Hampton's performance. The board concluded that McKeller's evaluation and Jantausch's evaluation were consistent with each other.
> I find this explanation reasonable.

Dist Ct. Op. at 15-6 (underlining added).

The district court, therefore, found the proffered explanation both credible and "reasonable." In doing so, it clearly usurped the role of the jury. It does not appear that the race of any other evaluator was a source of concern for anyone involved in deciding who was to be promoted. It was for a jury, not a judge, to determine if White's neutral explanation of the concern for McKellar's race was credible and reasonable. Incredibly, (and perhaps disingenuously) defendants now argue that Major White's testimony would not provide evidence from which a jury could infer racial animus. We disagree.

Defendants maintain that they were not required to consider McKeller's evaluations in any event because police promotional procedure only requires the PRB to consider each candidate's "last three performance evaluations," app. at 284, and McKeller's evaluation was outside of that range. However, the police promotional procedure also states that the PRB would consider each candidate's evaluation "for the last three years." Id. For those candidates who were only evaluated annually, the two standards result in consideration of the same number of evaluations -- three. However, for candidates such as Hampton, who were evaluated bi-annually, these two policies conflict. An employee who is evaluated annually would have three evaluations under either policy, but Hampton would have six evaluations. McKeller's evaluation, though not one of Hampton's prior three evaluations, was an evaluation that had been completed within the prior three years. It was for a fact finder to determine what, if any, significance the Board's decision to look only to Hampton's last three evaluations had. A jury could conclude that the Board did so pursuant to its policy of looking to the last three evaluations, or it could conclude that the totality of the circumstances here suggest that racial considerations motivated the Board to ignore whatever evaluation McKellar gave knowing that the conflict in personnel policy would explain its actions.

Plaintiffs also argue that Hampton's scores in the category of "Education and Self-Improvement" reflect a discrepancy that could give rise to a jury inference of discrimination. In this

category, Gabe Tornillo gave Hampton a score of "5," app. at 346, even though Hampton has an associates degree and credits from a state college.  App. at 371.  By contrast, Tornillo gave Gonzalez a "10" in this category, app. at 344, although he had yet to complete the requirements for the degree he was pursuing. App. at 379.  Defendants justify this by asserting that the scoring discrepancy merely reflects that Gonzalez was working toward his degree, and thus demonstrating a desire for self-improvement while he was on the police force. Hampton, defendants argue, had already completed his degree prior to becoming a police officer, and did not take additional courses during his tenure with the police department.

Similarly, Tornillo gave Hampton (who had 18 years of service on the police force and no demerits in his personnel file) a "6" in the category "Length and Merit of Service." However, other candidates with less time received ratings between "8" and "10" in this category.  App. at 343-46.  The district court correctly ruled that under N.J.S.A. § 40A:14-129 length of service alone would not guarantee Hampton the promotion.  See Gaskill v. Mayor and Comm'rs of Avalon, 373 A.2d 1019, 1020 (N.J. Super. 1977) ("In our opinion this statutory preference to those who enjoy seniority in service is applicable where two or more candidates have approximately equal qualifications.  It is but an additional factor to be considered on the merits of the evaluation of the individuals for promotion and not a mechanical rule which guarantees promotion to the senior employee.").

The significance of such evidence is for a jury's determination, not a court's. Had these discrepancies been presented to a jury, it may have found defendants' explanations quite credible, and returned a verdict in their favor.  However, that is not the test that we employ, nor is it the test the district court should have employed. Drawing all reasonable inferences in favor of plaintiffs, as we must, it is clear that they were entitled to have a jury decide whether or not the reasons proffered for not promoting Hampton were real or pretextual.

Defendants also urge us to affirm the district court because, according to Turning's affidavit, when Hampton told his colleagues he was going to file suit he stated that "he did not think that there was a racial motive to the Borough's actions, but rather he was using this method to get in the door."  Supp. App. at 6.  Plaintiffs counter that, assuming Hampton made such a statement, it was made to the successful applicant before Hampton became aware of evidence of discrimination. They claim that, once he became aware of this information, consulted with his attorney and actually filed suit, there could have been a number of reasons motivating Hampton's decision to sue, including a desire to gain access to his test scores and a belief that a discrepancy in certain scores was motivated by racial bias.  Further, during his deposition when Hampton was asked whether he thought certain low scores he received from the interviewees were racially motivated, he responded that he did not know what the motivations for the scores were or what bases were used to determine those scores.  App. at 198.

We decline to preclude Hampton from proceeding with this suit based upon a statement alleged to have been made before Hampton actually filed suit. At trial, a jury may conclude that these remarks present an insurmountable obstacle to plaintiff's recovery, but that is neither for us, nor the district court to determine at this time.

The district court stated that it found "at best, complaints of errors or omissions on the part of the board." Dist Ct. Op. at 24. However, the district court erred in not recognizing that the reasonable inferences that arise from these "errors and omissions" can create a jury question. The errors and omissions can not be dismissed as immaterial as a matter of law. Thus, we must reverse the district court's grant of summary judgment on plaintiff's "pretext" claim.

B. Retaliation Claim

Hampton alleges that his rights were violated when defendants retaliated against him by initiating an internal affairs investigation to determine whether or not he traveled to Newark to file an EEOC complaint while he was on duty, and subsequently, by removing him from the detective bureau and reassigning him to road patrol without explanation. Hampton claims that this conduct was retaliation in violation of Title VII, the New Jersey Law Against Discrimination, and his free speech rights.

The district court accepted defendants' assertion that the investigation arose out of a typographical error in plaintiffs' Verified Complaint. Defendants do not deny that when Borough Administrator, Helen Auringer, read the Verified Complaint without knowing the date was incorrect, Hampton was investigated. However, defendants maintain that when it became apparent that plaintiffs' complaint contained a typographical error, the investigation was closed. The district court thus concluded that no adverse action had been taken against Hampton as a result of the EEOC complaint, and that he therefore failed to establish a prima facie case of retaliation.

However, the district court did not go far enough. Although the investigation was dropped, Hampton's involuntary transfer remained. App. at 91. Hampton maintains that on August 28, 1995, he was suddenly told by Major White that he was being removed from the detective bureau and reassigned to road patrol. Hampton deems this to be a demotion. No explanation for the transfer was given, and although the transfer was to have been "temporary," the record reflects that it remains in effect. Hampton further claims that when he inquired about the reason for his transfer, Major White told him; "[d]on't worry, if you win this suit, nothing is going to happen anyway." Brief for Appellants at 12.

Defendants argue that Hampton's transfer was merely a reassignment and not a demotion, as neither Hampton's rank, nor his pay have been decreased. Defendants' further argue that the reassignment was part of a routine rotation schedule that requires officers to rotate from one department to another every three to five years. Although the rotation may not be a demotion, it came on the heels of his EEOC filing, and plaintiffs

argue that the road patrol assignment is less desirable than that of detective bureau.  Moreover, Hampton remains in his new assignment even though it was supposed to have been temporary. The significance of these facts should be resolved by jury deliberations, not motions for summary judgment.  Accordingly, we will reverse the district court's grant of summary judgment on plaintiff's claim of retaliation.

C.N.J.S.A. § 40a:14-129

As noted above, Count Seven of the Complaint alleges that defendants violated N.J.S.A. § 40a:14-129 by failing to give adequate consideration to his length and merit of service.  As the district court properly noted, that statute does not require that a promotion be governed solely by seniority.  Dist. Ct. Op. at 18.  (citing Gaskill v. Mayor & Comm'rs of Avalon, 149 N.J.S. 364 (App. Div. 1977).  Nevertheless, we are not prepared to hold, as a matter of law, that a jury could not conclude that this statute was not violated even if it concludes that Hampton's race was a factor in the defendants' failure to promote him.  Although we agree that it appears unlikely plaintiffs can prevail on this claim, if they can prove that, but for Hampton's race, his greater seniority would have earned him the promotion he sought, he may be able to establish a violation of the statute. Thus, we will reverse the district court's entry of summary judgment as to Count Seven of the Complaint as well.

IV.  CONCLUSION

For the reasons stated in the foregoing, we will vacate the order of the district court dated October 18, 1995, and remand the matter for further proceedings consistent with this opinion.