

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-5-2003

# Neiderlander v. Amer Video Glass Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1288

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Neiderlander v. Amer Video Glass Co" (2003). *2003 Decisions.* Paper 135.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/135

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-1288
_____

CAROLYN NEIDERLANDER,

Appellant

v.

*AMERICAN VIDEO GLASS COMPANY

*(Amended in accordance with Clerk's Order dated 02/19/03)
_____
Appeal from the United States District Court
For the Western District of Pennsylvania
D.C. No.: 01-cv-02347
District Judge: Honorable Donetta W. Ambrose

_____

Argued: October 21, 2003

Before: ALITO, FUENTES, and ROSENN, <u>Circuit</u> <u>Judges.</u>

(Filed: November 5, 2003)

Samuel J. Cordes (Argued)
Ogg, Cordes, Murphy & Ignelzi
245 Fort Pitt Boulevard
Pittsburgh, PA 15222

 *Counsel for Appellant*

David J. McAllister (Argued)
Reed Smith
435 Sixth Avenue
Pittsburgh, PA 15219

 *Counsel for Appellee*

ROSENN, Circuit Judge.

This appeal arises from a suit brought by Carolyn Neiderlander ("Neiderlander") against her former employer, American Video Glass Co. ("AVG"), alleging gender discrimination and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e, et seq. The District Court granted AVG's motion for summary judgment. We affirm.

## I.

In a careful and exhaustive opinion, Chief Judge Ambrose relied on the following undisputed facts. Neiderlander was employed by AVG as a glass laboratory technician from November of 1996 until her termination on June 25, 2001. The events eventually leading to her termination began in June of 2000, when AVG laid off seven male employees from its plant. Neiderlander was upset that AVG laid off two of her friends, but retained co-worker Jean Mayer, whom Neiderlander believed to be less productive. A month later, Neiderlander allegedly sabotaged one of Mayer's experiments and confessed the sabotage to co-worker Melissa Bowlin. Bowlin then told another co-worker, Linda Richter, of her conversation with Neiderlander. Richter brought the matter to the attention of the glass laboratory supervisor, Heather Cywinski. Bowlin chose not to tell Cywinski of the information she allegedly received from Neiderlander, and Neiderlander

denied the sabotage. Cywinski handled the situation by conducting meetings with the involved employees and warning workers in the glass laboratory that sabotage and pranks would not be tolerated.

The District Court further noted that in May 2001, AVG reorganized its glass laboratory and named Bryan Boso, a former manager, as supervisor. This appointment upset Neiderlander because she had not been considered for the supervisory position. She claimed that in 1999, Cywinski told her that she was a "chosen replacement" when a supervisory position became available. However, during the same conversation, Cywinski also allegedly told Neiderlander that further promotion would be limited because she suspected that the company did not want women in positions involving customer contact.

Neiderlander told Richter and other co-workers about her displeasure with Boso's promotion, alleging gender discrimination at AVG. On Friday, June 15, 2001, Boso noticed an open valve on a mass spectrometer that he had used that morning to run an experiment. He claimed to be 99 percent certain that he had closed the valve before leaving for lunch. He also believed that Neiderlander was the only other person in the laboratory who knew how to operate the spectrometer and the negative effect that opening the valve would have on the experiment. However, he did not confront Neiderlander at that time. Three days later, on June 18, Richter complained to Boso that Neiderlander had been disruptive, and had damaged some of her personal property. Richter asked Boso to speak with Bowlin about Neiderlander's past behavior and the

allegation of sabotage.

At this time, Bowlin came forward and informed Boso about Neiderlander's confession of sabotage that allegedly occurred back in June 2000. Thereupon, several of AVG's managers (two of whom were female), including Cywinski, Boso, the head of Human Resources, Sally Mueller, and the Glass Operations manager, James Yeager, met on three occasions to consider Neiderlander's continued employment status. They concluded that Neiderlander should be discharged. Neiderlander was given a memorandum citing two reasons for her discharge: deliberate sabotage of a co-workers experiment and engagement in "actions that have had a disruptive and negative effect on other company members and to the efficient operation of [the] plant.

Neiderlander timely filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). The EEOC granted a Notice of Right to Sue, and Neiderlander timely filed a complaint in the District Court. Her original complaint contained three claims: (1) failure to promote due to gender discrimination, (2) termination based on gender discrimination, and (3) retaliation for claims of gender discrimination. AVG filed a motion for summary judgment on all claims, which the District Court granted. Neiderlander timely appealed.

II.

Neiderlander appeals from judgment on two of her original three claims: termination based on gender discrimination and retaliation for complaints of gender discrimination. In an appeal of an order of summary judgment, this court's review is

4

plenary, See Nathanson v. Medical College of Pennsylvania, 926 F.2d 1368, 1380 (3d Cir. 1991), and all evidence must be reviewed in the light most favorable to the non-moving party. See Weldon v. Kraft, Inc., 896 F.2d 793, 797 (3d Cir. 1990). Summary judgment may be granted if there is "no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. V. Catrett, 477 U.S. 317 (1986).

## A.

The District Court found that Neiderlander established a *prima facie* case of gender discrimination. In cases where a plaintiff is able to establish a *prima facie* case through circumstantial evidence, courts undertake the burden shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this analysis, once a plaintiff has established a *prima facie* case, the burden of production switches to the defendant to provide a legitimate non-discriminatory justification for the employment decision. See Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir.), cert. denied, 515 U.S. 1159 (1995). If the defendant provides such a justification, then the burden switches back to the plaintiff to show by a preponderance of the evidence that the proffered justification is more likely than not a pretext for discrimination. See Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

Neiderlander argues that because there was no factual basis showing that she sabotaged the experiment, a jury could infer that the justification was pretextual. Yet, whether the sabotage actually occurred is not the primary consideration in this analysis.

5

When attempting to discredit an employer's proffered justification, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." Fuentes, 32 F.3d at 765. As the District Court noted, even drawing all inferences in Neiderlander's favor and assuming the allegation of sabotage was false, there is no evidence showing that AVG knew or should have known that Bowlin's allegations were false, or that AVG harbored some discriminatory animus. Without some evidence that could lead a reasonable fact finder to conclude that AVG did not actually believe Bowlin's allegation of sabotage, and instead acted with discriminatory animus, Neiderlander's claim cannot succeed.

Neiderlander also argues that a fact-finder may disbelieve AVG's justification because (1) the allegation of sabotage was over a year old, (2) AVG's investigation into the sabotage was insufficient, and (3) AVG allegedly changed its justification for the termination. None of these arguments provide reasonable evidence of pretext. Bowlin did not come forward with evidence of sabotage until Boso questioned her on the matter in 2001. AVG acted reasonably on Bowlin's information at the time she actually came forward, even though the conduct allegedly occurred a year prior. Similarly, if an employer's belief supporting its adverse personnel action is reasonable, the employer is not required to investigate further. Waters v. Churchill, 511 U.S. 661, 680 (1994). The District Court found that AVG reasonably believed Bowlin's statement, given its consistency with other information and occurrences reported over the previous year.

6

No evidence was presented to show that AVG had any reason to believe that Bowlin was not trustworthy. Lastly, statements from AVG employees taken during depositions do not show that individuals changed their testimony regarding the justification for Neiderlander's termination. Sabotage was consistently the primary justification, and discussion of other negative behavior or disruptions in the glass laboratory was not inconsistent with AVG's justification.

Finally, Neiderlander argues that the statement made by Cywinski in 1999, regarding AVG's alleged bias against promoting women to positions with customer contact, constitutes an atmosphere of discrimination that refutes AVG's justification for termination. While such a generalized statement may be a relevant consideration, See Woodson v. Scott Paper Co., 109 F.3d 913, 922 (3d Cir. 1997), it does not necessarily meet the standard of evidence required to survive summary judgment. As we stated in Fuentes, the plaintiff must point to some direct or circumstantial evidence allowing a reasonable factfinder to either "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." 32 F.3d at 764. Cywinski's statement, even if it is accepted as an admission that AVG has improperly considered gender in other promotion decisions, does not reasonably address AVG's actions in terminating Neiderlander. The statement does not cast doubt on the decisionmakers' belief in Bowlin's statement regarding sabotage, nor does it provide grounds for a reasonable belief that an invidious discriminatory reason actually motivated the

7

decisionmakers. The District Court, therefore, appropriately entered summary judgment for the employer on the discriminatory discharge claim.

B.

Regarding the retaliation claim, we conclude that summary judgment also is appropriate. We write, however, to clarify the District Court's finding that there was no *prima facie* case of retaliation.

As a preliminary matter, AVG argued that the retaliation claim should have been barred because it was not explicitly raised in the EEOC complaint. The District Court correctly noted that jurisdiction may be assumed over additional charges if they are "reasonably within the scope of the claimaint's original charges." Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984). This was the case with Neiderlander's claim.

To establish a *prima facie* case of retaliation, Neiderlander must show that she engaged in protected activity, that AVG took adverse action against her, and that there is a causal connection between the protected activity and the adverse action. Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 323 (3d Cir. 2000). The District Court found that Neiderlander failed to establish the first prong of her *prima facie* case because her informal complaints of gender discrimination were directed to co-workers and not management. The Court, therefore, concluded that this did not constitute "protected activity." We believe that this interpretation of protected activity is too narrow.

Title VII provides that it shall be unlawful for an employer to discriminate against

8

an employee because she has "opposed any practice made unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Caselaw has clarified that opposition to unlawful employment practices may take many forms, including "complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." Sumner v. United States Postal Service, 899 F.2d 203, 209 (3d Cir. 1990). At essence, a plaintiff alleging retaliation must show some form of opposition, which is communicated to the employer, followed by adverse action by the employer. The District Court noted that the record was unclear as to whether Richter informed Boso of Neiderlander's gender discrimination complaints. Yet, even assuming that the complaint was communicated to Boso for purposes of summary judgment analysis, the District Court held that Neiderlander's informal complaint to co-workers did not constitute protected activity. As established in Sumner, however, the opposition to discriminatory practices need not be made directly to managers in order to constitute protected activity, and Neiderlander's complaints to her co-workers, assuming they were communicated to management, would be the type of opposition to discrimination that § 2000e-3(a) seeks to protect.

The next two elements of the *prima facie* case are also present. Adverse action was taken against Neiderlander when she was terminated. The causal connection may be inferred from the close proximity in time between the protected activity and the adverse action. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000). Therefore,

9

we must conclude that Neiderlander did meet the low threshold for establishing a *prima facie* case of retaliation.  See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (stating that the burden of establishing a *prima facie* case is not onerous).

Notwithstanding, her case fails because she has not met the requirements of the McDonnell Douglas burden shifting analysis, which also apply to claims of retaliation. See Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 (3d Cir. 2003).  AVG claimed that the allegation of sabotage was the legitimate justification for the termination, and Neiderlander could offer no evidence showing that this justification was likely pretextual.  The District Court, therefore, committed no error in entering summary judgment for the employer on the retaliatory discharge claim.

III.

Accordingly, the judgment of the District Court is affirmed.  Each side shall bear its own costs.

TO THE CLERK:

Please file the foregoing opinion.

/s/ Max Rosenn
Circuit Judge
