

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-15-2004

# Barber v. Univ Medicine

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2033

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Barber v. Univ Medicine" (2004). *2004 Decisions.* Paper 74.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/74

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-2033

———————

RICHARD E. BARBER,
                              Appellant

v.

UNIVERSITY OF MEDICINE AND DENTISTRY
OF NEW JERSEY; JAMES A. ARCHIBALD;
LOUIS C. GOETTING; ELLEN M. CASEY;
RONA ZORN; LINDA LUCIANO; BRUCE KENNY

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 01-cv-02836
District Judge:  The Honorable Jose L. Linares

———————

Submitted Under Third Circuit LAR 34.1(a)
November 2, 2004

———————

Before: ALITO, BARRY, and FUENTES, Circuit Judges

———————

(Opinion Filed:     December 15, 2004     )

———————

OPINION

———————

BARRY, <u>Circuit Judge</u>

**I.**

Appellant Richard Barber filed a complaint in the United States District Court for the District of New Jersey against the University of Medicine and Dentistry of New Jersey ("UMDNJ") and several UMDNJ employees, alleging, as relevant here, violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The District Court granted appellees' motion for summary judgment and Barber appealed. We have jurisdiction under 28 U.S.C. § 1291, and will affirm.

**II.**

We will set forth only those facts necessary to our decision. Barber is an African-American male who was hired in 1993 to serve as Director of the Purchasing Department at UMDNJ. The Purchasing Department was responsible for the procurement of goods and services for UMDNJ. In 1998, Barber applied for the newly-created position of Executive Director of Material Management ("Executive Director"). The Executive Director was to be responsible for the supervision of several UMDNJ departments, including the Purchasing Department, and would report to James Archibald. UMDNJ interviewed Barber for the position, but ultimately hired Louis Goetting, a white male. In the spring of 1999, the Executive Director position again became vacant. Although Barber reapplied and was reinterviewed, UMDNJ hired Ellen Casey, a white female.

Barber alleges that Casey acted antagonistically towards him, while appellees

2

argue that Barber failed to follow directives and was repeatedly insubordinate. Barber further claims that Archibald evaded UMDNJ's bidding procedures for the purchase of copiers, and that he was punished for exposing this alleged misdeed.

In late 1999, Barber filed two internal discrimination complaints with the UMDNJ's Office of Affirmative Action/Equal Opportunity. On March 28, 2000, the Office determined that none of Barber's claims could be substantiated. On April 10, 2000, UMDNJ terminated his employment. He timely appealed.

## III.

We review the District Court's grant of summary judgment de novo. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 727 (3d Cir. 1995). Summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment will be warranted only if the record contains insufficient evidence to allow a reasonable jury to find in favor of the non-moving party at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All facts and reasonable inferences therefrom are viewed in the light most favorable to the non-moving party. *Eddy v. V.I. Water & Power Auth.*, 369 F.3d 227, 228 n.1 (3d Cir. 2004).

A. Failure to Promote

The shifting burdens in employment discrimination cases are well understood. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Applying these

burdens here, the District Court found that Barber had set forth a prima facie case, and this finding does not appear to be in dispute. Next, in response to the prima facie showing, appellees satisfied their burden to "produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981)). Specifically, appellees provided evidence that both Goetting and Casey had past governmental experience superior to that of Barber. The burden of production then shifted back to Barber to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Jones v. School Dist.*, 198 F.3d 403, 410 (3d Cir. 1999) (citing *Burdine*, 450 U.S. at 252-53). The discrimination Barber alleges is discrimination based on race.

Barber heavily emphasizes his nuclear safety background, and argues that appellees changed or ignored their own hiring criteria regarding the need for the Executive Director to have knowledge of radioactive material. Citing to *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305 (2d Cir. 1997), Barber argues that such "deviation from hiring standards" is "subject to scrutiny" under Title VII. *Stern* does not help Barber if for no other reason than that the very powerful facts of *Stern* are readily distinguishable from the facts here. The plaintiff in *Stern* was highly qualified and highly regarded non-Hispanic Professor of Spanish who applied for, but did not receive, a position as Director

4

of the Spanish Language Program at Columbia University. As relevant to Barber's "deviation from hiring standards" argument, the Court of Appeals for the Second Circuit found evidence that the successful candidate was selected through the University's "unprecedented appointment of an interdepartmental search committee a majority of whose members . . . were not competent to assess crucial skills of candidates for the director position [and] that this atypical committee was created because of the belief that Stern would likely win the position if normal procedures were followed . . . ." 131 F.3d at 313. No such evidence of deviation is seen here.

Even assuming, *arguendo*, that Barber's background in nuclear safety was superior to that of Goetting and Casey, it is uncontroverted that they possessed qualifications that Barber lacked. Indeed, at his deposition, Barber testified that "I am an African-American, whether that entered into that thinking [concerning the hiring decision], I don't know, but the fact suggests to me that I was not selected because I'm African-American notwithstanding the fact that my credentials were ideally suited for the position . . . ." Appendix ("A") at 363. Barber may speculate that this is so, but he failed to produce any evidence that appellees' proffered reasons for not promoting him were a pretext for discrimination based on race. As the District Court put it, Barber "has not put forth any evidence from which the Court can infer that a frank evaluation of qualifications did not fully motivate the decision to hire Goetting and then Casey." A10-11.

B. Hostile Work Environment

In order to successfully bring an action under Title VII for a hostile work environment, Barber was required to prove the following: (1) he suffered intentional discrimination because of his race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990) (citing *Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 619-20 (6th Cir. 1986)).

Viewing all the facts and the reasonable inferences therefrom in the light most favorable to Barber, we agree with the District Court that Barber failed to prove these elements. He complains that he was treated rudely by Casey, and that Casey employed "divisive managerial tactics" which undermined his authority, including an incident where Goetting and Casey met privately with the only white subordinate on Barber's three-person staff. While there was clearly friction between Casey and Barber, there is no evidence that Casey's behavior stemmed from any racial animus. Instead, the friction between them appears to be simply the result of clashing managerial styles, which do not give rise to a cause of action under Title VII.

C. Retaliation

Barber also contends that the District Court erred in granting summary judgment

on his retaliation claim. To establish a prima facie case of retaliation, Barber was required to demonstrate that: (1) he engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action. *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 286 (3d Cir. 2001). If he established a prima facie case, the *McDonnell Douglas* burden-shifting framework discussed above applied.

All parties agree that Barber satisfied the first two prongs of the prima facie case. Barber failed, however, to provide any evidence of a causal link between the adverse action he received and the internal discrimination complaints he filed. Although he was terminated only a few months after he filed his internal complaints, "temporal proximity alone will be insufficient to establish the necessary causal connection when the temporal relationship is not 'unusually suggestive.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000). Instead, "each case must be considered with a careful eye to the specific facts and circumstances encountered." *Id.* at 279 n.5. There is nothing "unusually suggestive" here. Rather, what is seen are numerous incidents involving clashes with Casey and insubordination by Barber, albeit occurring after he filed his internal complaints, but with no causal link shown between those complaints and his termination.

7

D.  Retaliation under CEPA and New Jersey Common Law

The District Court correctly held that any claim Barber may have had under the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 *et seq.,* was time-barred pursuant to CEPA's one-year statute of limitations, and that he failed to demonstrate any basis for equitable tolling.  With respect to his common law whistle-blower claim, Barber failed to demonstrate that appellees' actions ran contrary to a "clear mandate of public policy," as required under New Jersey law.  *Ballinger v. Delaware River Port Authority*, 172 N.J. 586, 605 (2002).

E.  Wage Discrimination

Barber also appeals the District Court's dismissal of his claim for wage discrimination under Title VII.  As the District Court correctly noted, Barber failed to produce any evidence that he received less compensation than his white counterparts.

**IV.**

We will affirm the March 12, 2004 order of the District Court granting appellees' motion for summary judgment.

8